CITY OF NEW YORK v. UNITED STATES TRUST CO. et al.

(Supreme Court, Appellate Division, First Department. December 7, 1906.)

1. MUNICIPAL CORPORATIONS—STREETS—ENCROACHMENTS—REVOCATION OF LICENSE.

A license under which stone steps and a railed areaway were constructed, extending into the sidewalk beyond the building line, is revocable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 1443.]

2. SAME—REMOVAL—ACTIONS—EVIDENCE.

In an action to compel the removal of steps and a railed areaway encroaching on a sidewalk in a city, evidence *held* sufficient to show that the structures extended into the street.

3. LANDLORD AND TENANT—CONDITION OF PREMISES—EXPENSES—COVENANTS.

A lessee covenanted to "do all repairs required to the walls  *  *  * and repair and make good any damage occurring except by fire or the elements to said building or any portion thereof and do all inside and outside repairs necessary to said premises, including roofs, sidewalks and yards thereof,  *  *  * " and to "comply promptly with all the rules, regulations and ordinances of the board of health, fire department and building department, or other city departments and city ordinances applicable to said premises." The lease also provided that the tenant should quit and surrender the premises at the expiration of his term in as good condition as they were at the commencement, reasonable use and wear and damage by the elements excepted, and that he should not make any alterations, additions, or improvements without the written consent of the landlord. The tenant was in possession at the time the lease was executed. Subsequently the city required the removal of stone steps and a railed areaway which extended into the street in front of the premises. *Held*, that the lease did not impose on the tenant the expense of such removal.

4. SAME—LEASES—CONSTRUCTION—INTENTION OF PARTIES.

Leases, like other contracts, are to be reasonably construed according to the apparent intention of the parties.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Landlord and Tenant, § 98.]

5. SAME—REPAIRS—LIABILITY OF LESSEE.

Where particular repairs to be made by the lessee are specified in a lease, his liability to incur other expenses cannot be extended by construction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Landlord and Tenant, § 538.]

6. SAME—IMPLIED AGREEMENT.

Where a landlord leases premises with an existing public nuisance thereon, there is no implied agreement that the tenant will pay the expense of remedying the evil.

Appeal from Special Term, New York County.

Action by the city of New York against the United States Trust Company of New York and others. From a judgment for defendants, plaintiff appeals. Reversed.

Argued before McLAUGHLIN, PATTERSON, INGRAHAM, HOUGHTON, and SCOTT, JJ.

Theodore Connoly, for appellant.
Warren Leslie, for respondent trustees.
Henry B. Wesselman, for respondent Farrington.

HOUGHTON, J. The action is brought to compel the removal of a stone stoop and steps and a railed areaway in front of Nos. 1424 and 1426 on the easterly side of Broadway, in the city of New York, between Thirty-Ninth and Fortieth streets, erected and maintained by the defendants, on the ground that they constitute a public nuisance in that they are encroachments upon the street. The stoop extends into the sidewalk beyond the building line about seven feet and the areaway about six feet, and they were erected and constructed in 1870 under claimed license from the city.

The plaintiff's complaint was dismissed on the ground that it failed to establish the easterly line of Broadway, and hence did not prove that the structures were in the street or sidewalk. We think the plaintiff did make this proof, and that the dismissal of the complaint was error. Broadway was widened and straightened under chapter 890, p. 2236, of the Laws of 1869, known as the "Broadway Widening and Straightening Act." Pursuant to the provisions of this act, the easterly and westerly lines of Broadway were fixed, and a map certified and filed September 16, 1869, showing such lines. On this map, in the locality in question, the distances from the west line of Sixth avenue to the easterly line of Broadway on each side of each cross street are given in feet and inches, and in the same manner the distances from the east line of Seventh avenue to the westerly line of Broadway are specified. In the straightening of Broadway in certain sections a new building line was established; but on the east side of Broadway between Thirty-Ninth and Fortieth streets the old building line was preserved.

On the trial the plaintiff proved by competent engineers, familiar with the locality and the landmarks and street lines, that they measured the distance on Thirty-Ninth and Fortieth streets from the west line of Sixth avenue to the building line on the east side of Broadway, and that they corresponded with the distances shown by the distances on the map of 1869, and that the structures complained of encroached upon the street from six to seven feet. This evidence was not disputed, and could not well be. It established the east line of Broadway and the encroachment. Even if the defendants had a license to construct originally, it was revocable and had been revoked. Plaintiff, therefore, made a case entitling it to the relief prayed for. The defendant Farrington is the tenant of the premises in question, under a lease in writing by which he is bound to make certain repairs. Each defendant served his answer upon his codefendant, demanding that, in case a removal of the structure should be decreed, it should be adjudged that the other bear the expense. The law permits such an issue to be determined in the one action, and both the landlord and the tenant have asked that we determine on this appeal the question of law involved.

When Andrew Scher, under whose will the defendants hold title as trustees, purchased the premises, the encroachments existed as they now are, and defendant Farrington was tenant. In 1902 he entered into a further lease with his codefendant whereby he covenanted that he would "do all repairs required to the walls, ceiling, and paper, plumbing, elevator, ranges, pipes, fixtures, glass and the woodwork in and about the premises, and repair and make good any damage occurring excepting by fire or the elements, to said building, or any portion thereof, and do all inside and outside repairs necessary to said premises, including roofs, sidewalks and yards thereof, * * *" and "comply promptly with all the rules, regulations and ordinances of the board of health, fire department and building department, or other city departments and city ordinances applicable to said premises." In another portion of the lease it is provided that the tenant shall quit and surrender the premises at the expiration of his term in as good state and condition as they were at the commencement, reasonable use and wear and damage by the ele-

ments excepted; and it is further provided that he shall not make any alterations, additions, or improvements on the demised premises without the written consent of the landlord.

We see nothing in these covenants, or in the lease as a whole, which imposes any obligation upon the tenant to incur the expense of removing the encroachments in question. Certainly their removal was not in the minds of the parties when the lease was entered into. The tenant's agreement to comply with all the rules, regulations, and ordinances of the various city departments did not contemplate the tearing down of the stoop and steps and building a new entrance to the building, or the abandonment of the areaway and the providing of a new mode of outside entrance to the basement. Leases, like other contracts, are to be reasonably construed according to the apparent intention of the parties. May v. Gillis, 169 N. Y. 330, 62 N. E. 385; Gillet v. Bank of America, 160 N. Y. 549, 555, 55 N. E. 292. Where particular repairs are specified in a lease, they limit the construction to be put upon broader language used in that connection. Ducker v. Del Genovese, 93 App. Div. 575, 87 N. Y. Supp. 889. The removal of the stoop and areaway is surely an alteration of the building. By the lease the tenant is prohibited from making any "alterations, additions, or improvements" to the premises without the written consent of the landlord. This negatives the idea that the tenant agreed to bear the expense of such alterations if they should be forced upon the building by any superior authority.

The landlord insists that because the encroachment or nuisance existed, and the present tenant was in possession at the time of the leasing, a more liberal rule applies to him. This circumstance, on the contrary, we think is favorable to the tenant. If a landlord leases premises with an existing public nuisance thereon, there certainly is no implied agreement that the tenant will be to the expense of remedying the evil. If the structure is unlawful as between the owner and the tenant, it is incumbent upon the owner to make it legal, certainly in the absence of an express agreement by the tenant so to do.

The judgment should be reversed and a new trial granted, with costs to the appellant against the respondent trustee to abide the event. All concur.