## HERALD SQUARE REALTY CO. v. SAKS & CO.

(Supreme Court, Appellate Division, First Department. July 10, 1913.)

LANDLORD AND TENANT (§ 150*)—ALTERATIONS—DUTY OF TENANT TO MAKE.

An agreement between plaintiff and defendant for the lease of a building to be erected provided that the plans should be submitted to defendant for approval, and the plans submitted indicated that the show windows of the stores on the ground floor would project from the front of the building 12 inches beyond the building line. The lease, executed after the building was completed, leased the premises to defendant for 20 years, and provided that defendants should pay all taxes and charges imposed pursuant to the authority of the Legislature, and would promptly comply at its own expense with all orders and regulations of any municipal or other authority, and would at all times keep every part of the premises inside and outside in good repair, and would make no alterations to the exterior without the written consent of the lessor, except that defendant should have the right at any time to install an entrance. *Held,* that, since the specifications showed that the show windows encroached upon the street, it was defendant's duty as tenant to remove such obstructions pursuant to an order of the board of estimate and apportionment canceling permits allowing such encroachments on the building.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 536, 538, 544–548, 555, 556; Dec. Dig. § 150.*]

Scott, J., dissenting.

Action by the Herald Square Realty Company against Saks & Co. Submission of controversy on agreed statement of facts. Judgment for plaintiff as stated.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Samson Lachman, of New York City (Theodore Baumeister, of New York City, on the brief), for plaintiff.

Clayton J. Heermance, of New York City, for defendant.

LAUGHLIN, J.   The plaintiff is the owner of premises abutting on the east on Broadway and Sixth avenue between Thirty-Third and Thirty-Fourth streets, in the borough of Manhattan, N. Y., and of the building thereon; and defendant is in possession thereof under a lease conducting a dry goods department store business.   The submission of the case is for the purpose of obtaining a judicial decision as to whether landlord or the tenant must bear the expenses, aggregating $7,843, incurred by the former in complying with certain resolutions of the board of estimate and apportionment, and with orders duly issued by the president of the borough of Manhattan, pursuant to said resolutions, for the removal of encroachments of the show windows of the building on Thirty-Fourth street and Broadway.

On the 14th day of May, 1901, the plaintiff's predecessors in title entered into an agreement with Andrew Saks, with a view to erecting a building on the premises and leasing the same to him, or to his assigns, for conducting a dry goods department store business. That agreement provided that the plans for the building should be submitted to him, or his assigns, for approval.   The rights of the then owners of the premises under the agreement were duly assigned to the plaintiff on its incorporation on or about the 28th day of May, 1901; and the rights of Mr. Saks were duly assigned to the defendant, which was incorporated by him in the month of January, 1902. On the 14th day of November, 1901, plans and specifications for the building and an application for permission to erect the same were duly filed with the department of buildings.   The plans and specifications indicated that the show windows of the stores on the ground floor projected from the front of the building beyond the building lines of Thirty-Fourth street and Broadway to the extent of 12 inches at the point of greatest encroachment.   The plans and specifications and application were duly approved on the 27th day of December, 1901, and the building was erected pursuant to said plans and specifications between that date and the 1st day of October, 1902. During the course of the erection of the building, the plans therefor were from time to time submitted to the defendant.   On the completion of the building, the defendant took possession, and has ever since occupied the same, and on the 2d day of November, 1903, the plaintiff and defendant duly executed an agreement in writing, by which the plaintiff leased the premises, with the building and appurtenances, to the defendant for the period of 20 years and 6 months from the 1st day of November, 1903, at an annual rental payable in monthly installments.   The tenant agreed to pay all taxes, assessments, and other charges levied against or imposed upon the property pursuant to the authority of the Legislature of the state, or of the Congress of the United States.   The tenant also covenanted that it would "promptly comply at its own expense with all orders, no-

tices, regulations or requirements of any municipal, state or other authority or departments or of the New York board of fire underwriters, with reference to said premises." The lease contained further covenants on the part of the tenant, who was the party of the second part, and among others the following:

"The said party of the second part further covenants that * * * it will at all times keep the demised premises and every portion thereof, inside and outside, and all articles mentioned in the annexed schedule, in good order, condition, and repair. The party of the second part shall be at liberty to make alterations in and replace the fixtures belonging to the party of the first part, all improvements to which shall be and become the property of the party of the first part; nothing herein contained, however, shall be construed to prevent the said party of the second part from assigning this lease at any time during the term hereof to any firm or firms, person or persons, or corporations, having an actual unimpaired cash capital of not less than five hundred thousand dollars ($500,000) at the time of the assignment. * * * And the party of the second part hereby waives the right given by section 197 of the Real Property Law of the state of New York (Consol. Laws 1909, c. 50) to surrender the possession of said premises, and to terminate the obligation for rent, in case of destruction or injury by fire or the elements. * * * The party of the second part further agrees that it will make no alterations to the exterior of the premises herein demised without the written consent of the party of the first part, except that the said party of the second part shall have the right and option at any time during the term herein granted to install an entrance to the said building from the Thirty-Fourth street side thereof in accordance with designs and plans to be submitted to and approved by the said party of the first part. Nothing herein contained, however, shall be construed to prohibit the party of the second part from making such alterations to the interior of the said premises as it may deem desirable."

The tenant also agreed to keep the building insured against damages by fire for the benefit of the landlord, and to pay the premiums. It was further provided that, in the event that the building should be partially destroyed by fire, it should be restored as speedily as possible, but that the landlord should not be obliged to pay toward the restoration more than the amount collected for insurance. On the 9th day of March, 1911, and the 15th day of February, 1912, the board of estimate and apportionment duly adopted resolutions, which, among other things, repealed, canceled, and revoked all permits and licenses for the projection or erection of such encroachments upon or over the streets in question, and directing the president of the borough to remove such projections and encroachments, and thereafter the president of the borough duly ordered the plaintiff and defendant to remove the encroachments of said show windows. The plaintiff duly demanded that the defendant comply with said resolutions and order, and, on its failure so to do, the plaintiff complied therewith between the 30th day of July and the 20th day of October, 1912, and the reasonable cost and expense of doing the work was the amount specified. The plaintiff thereafter duly demanded of the defendant reimbursement for said amount with interest.

[1] The building having been constructed for the tenant, pursuant to plans and specifications approved for or by it, which show that the show windows encroached upon the streets in question, and it having thereafter taken the formal lease with covenants, among others, as herein set forth, I am of opinion that it was the duty of the

tenant to remove the obstructions. Markham v. David Stevenson Brewing Co., 104 App. Div. 420, 93 N. Y. Supp. 684; s. c., 111 App. Div. 178, 97 N. Y. Supp. 604, affirmed 188 N. Y. 593, 81 N. E. 1169; Bushwick Realty Co. v. Sanitary Fire Proofing Co., 129 App. Div. 533, 114 N. Y. Supp. 13; Harder Realty Co.. v. Sam Ping Lee, 74 Misc. Rep. 436, 132 N. Y. Supp. 447; Jacobs v. McGuire, 77 Misc. Rep. 119, 136 N. Y. Supp. 64. Stress is laid in behalf of the tenant on the provisions of the lease, by which it covenanted that it would make no alterations to the exterior of the premises without the written consent of the landlord, except to install an entrance from Thirty-Fourth street, according to designs and plans to be submitted to and approved by the landlord. Those provisions of the lease did not apply to alterations lawfully required by the public authorities. They were merely designed to prevent the tenant from making changes and alterations to the exterior of the building for its own convenience or purposes. The case of the City of New York v. United States Trust Co., 116 App. Div. 349, 101 N. Y. Supp. 574, upon which the tenant relies, is distinguishable principally upon the ground that in the case at bar the building in question was constructed for the tenant with these encroachments, the removal of which it was bound to know might lawfully be required, and in the lease, in that case it was not, as here, expressly provided in the clause requiring the tenant to comply with lawful rules, regulations, and ordinances, that such compliance should be at his expense which left that clause open to the construction that it was intended to relate to rules, regulations, and ordinances with respect to the use of the premises, as distinguished from changes and alterations. Moreover, this lease was for a much longer term and its provisions all tend to show that the tenant was to bear all expenses, and that the landlord was to receive the rent as a return on its investment without any deduction or liability on account of the premises during the term of the lease.

It follows that the plaintiff is entitled to judgment against the defendant for the sum of $7,843 and interest thereon from the 20th day of October, 1912, together with costs.

INGRAHAM, P. J., and DOWLING and HOTCHKISS, JJ., concur.

SCOTT, J. In my opinion the cost of removing the unlawful obstruction upon the public highway was an expense to be borne by the owner of the building, and not by the tenant. We so held in City of New York v. United States Trust Co., 116 App. Div. 349, 101 N. Y. Supp. 574, and I think that the reasoning in that case is equally applicable to this. The provision in the lease in this case upon which plaintiff relies is that the tenant "will promptly comply at its own expense with all orders, notices, regulations or requirements of any municipal, state or other authority or departments or of the New York Board of Fire Underwriters with reference to said premises." The corresponding covenant on the part of the tenant in the United States Trust Company Case, supra, was that he would comply with all "the

rules, regulations and ordinances of the board of health, fire department and building department, or other city departments and city ordinances applicable to the premises." If there be any substantial difference in the meaning of the two covenants, I am unable to find it. It is agreed in the present case that during the erection of the building the plans therefor were submitted to the defendant. I fail to see any significance in this fact except as evidence that defendant when it took the lease knew that the show windows projected upon the highway. But it did not need an examination of the plans to learn that fact as it was evident upon inspection. So, also, in the case cited above, the encroachment existed when the tenant took the lease, and he accepted it with clear notice. As I look at it, the removal of these encroachments was not within the fair meaning of the clause in the lease relied upon. They were from the beginning unlawful encroachments and public nuisances. People ex rel. Browning, King & Co. v. Stover, 145 App. Div. 259, 130 N. Y. Supp. 92, affirmed 203 N. Y. 613, 96 N. E. 1126. The submission does not state that any permit was ever given by any municipal authority for the erection of the encroachments; and, if the case last cited was well decided, no municipal or other authority ever could have lawfully authorized such erection. The resolutions of the board of estimate and apportionment, attached to the submission, therefore had no bearing upon these particular encroachments, which were unlawful from the beginning and which it was the duty of the borough president to remove whether the board of estimate and apportionment directed him to do so or not.

If the knowledge of the plans on the part of the defendant be considered an acquiescence and co-operation on its part in the erection of the encroachment and the creation thereby of the public nuisance, it is well settled that the law will not decree contribution between joint tort-feasors. The cases relied upon by plaintiff have no bearing upon the question. Markham v. David Stevenson Brewing Co., 104 App. Div. 420, 93 N. Y. Supp. 684; Bushwick Realty Company v. Sanitary Fire Proofing Co., 129 App. Div. 533, 114 N. Y. Supp. 13. They arose under the tenant's covenant to make repairs. This is not a case of making repairs, but of making a change in the structure of the building.

Judgment should be rendered for the defendant.