(158 App. Div. 533.)

MORRISSY v. RHINELANDER REAL ESTATE CO. et al.

(Supreme Court, Appellate Division, First Department.   October 31, 1913.)

LANDLORD AND TENANT (§ 152*)—CONSTRUCTION OF LEASE—COMPLIANCE WITH ORDINANCES.

> A lease provided that the lessee would comply with all orders and regulations of the corporation of the city of New York or other governmental authority, and on failure so to do the lessor might do so and recover the expense thereof from the lessee, and that the lessee would indemnify the lessor from all claims for damages from the management of the sidewalk and would comply with all ordinances of the city of New York or as to the sidewalks, etc.  *Held*, that the lessee would be required to pay the cost of the removal of encroachments on the sidewalk in front of the premises pursuant to a resolution of the board of estimate and apportionment, especially where the lessee erected such encroachments at his own expense.

> [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 152, 538–543, 545–549, 551–557; Dec. Dig. § 152.*]

Action by Thomas Morrissy against the Rhinelander Real Estate Company and others.   Submission of controversy on agreed statement of facts.   Action dismissed as against part of defendants, and judgment rendered for plaintiff as against the other defendants.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Wesselman & Kraus, of New York City (Henry B. Wesselman, of New York City, of counsel), for plaintiff.

Bowers & Sands, of New York City (J. M. Bowers, of New York City, of counsel), for defendants Rhinelander Real Estate Co. and B. Ogden Chisolm.

Nathan Burkan, of New York City, for defendants Finkelstein.

CLARKE, J.   On June 17, 1908, the Rhinelander Real Estate Company and the defendant Chisolm, each owners of adjoining property on West Fourteenth street, entered into leases of said properties to the plaintiff for a term of years.   The said leases contained the following covenants:

"The party of the second part further covenants and agrees with the party of the first part that he will, at his own expense, perform, comply with, and discharge, all orders, requirements, rules and regulations of every nature and kind whatsoever of the corporation of the city of New York, or of any department thereof, or of the borough of Manhattan, or any department thereof, or of the state of New York, or other governmental authority having jurisdiction in the premises, and that the party of the second part will at his own expense, perform and comply with all requirements, rules and regulations of the board of fire underwriters; and if the party of the second part shall not execute and carry out within the time specified, any orders or regulations of any of the aforesaid departments, municipal or state authorities, or of the board of fire underwriters, the party of the first part may execute and comply with any such orders or requirements, the cost and expense whereof the party of the second part covenants and agrees to repay, and the same shall become and be treated as rent under the terms of this lease.  And it is further agreed by and between the parties hereto, that the said party of the second part will indemnify and save harmless the party of the first part of and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

from all claims for damages arising out of the conduct or management of the demised premises by the party of the second part, or on account of any conditions thereof created by him, or arising out of the conduct or management by him of the street or sidewalk adjoining the said premises, or on account of any conditions thereof created by him. * * * Also that the party of the second part will keep and maintain the sidewalk in front of all the demised premises in good order and condition, and comply with all ordinances, regulations and orders of the city of New York, or of the borough of Manhattan, or any department of either, in respect thereto."

On the 9th day of June, 1910, plaintiff subleased both parcels to the defendants Finkelstein by an agreement in writing for a term of 12 years, 8 months, and 29 days. This sublease contained identical covenants to those above quoted, and the sublease was made under the consent in writing of the two owners.

Prior to the execution and delivery of the leases to Morrissy, quoted above, and in the year 1906, while the said tenant was holding under previous leases between the same parties, he, with the consent of the landlords, made certain alterations in the entrance ways, window spaces, and show windows of the said premises, the cost of which alterations was shared equally between the tenant and the landlords, and consisted in changing the glass and frame work of said entrance ways, window spaces, and show windows; but the fronts as reconstructed or altered were placed on the identical lines as previously inclosed the same. At the time of the execution and delivery of the leases hereinbefore first mentioned, and up to the 2d of October, 1912, the ground or store floors of said buildings on Fourteenth street included entrance ways, window spaces, and show windows projecting for the entire length of said buildings about four feet beyond the building line of the southerly side of Fourteenth street, which projections were encroachments upon said street.

In July, 1910, the owners and Morrissy executed agreements in writing to the Finkelsteins consenting to certain alterations to said buildings to be made by the Finkelsteins at their own expense. Thereafter and in pursuance of said last agreements the Finkelsteins altered the entrance ways, window spaces, and show windows of said buildings so as to shape the fronts with a rounded effect instead of a square; but the new windows were placed upon the identical lines with the old windows, and no greater encroachments were created by the rebuilding of the windows than theretofore existed.

In May, 1911, the board of estimate and apportionment passed a resolution directing the removal of all encroachments of store fronts, show windows, and entrance ways projecting on Fourteenth street between Third and Sixth avenues in the borough of Manhattan. On or about July 7, 1911, the president of the borough of Manhattan duly served upon the plaintiff and the defendants an order directing them to remove all encroachments of every description projecting on Fourteenth street in front of said premises. After the receipt of said order, defendants Finkelstein demanded of the plaintiff that as their landlord he proceed at his own expense to remove said encroachments. The plaintiff declined to do said work, contending that under the terms of the lease made between him and defendants Finkelstein it was in-

cumbent upon them to perform said work and to bear the expense thereof. Thereafter the said Finkelsteins removed the encroachments in question and complied with the order of the president of the borough of Manhattan at a cost to them of $1,865, which was the reasonable value thereof, and deducted the said amount from the rent which thereafter accrued to this plaintiff under their lease, and refused to pay to the plaintiff such moneys so deducted by them although duly demanded. When the defendants Finkelstein demanded of the plaintiff that he perform the work necessary to comply with said order, the plaintiff demanded of the owners, as his landlords, that they comply with said order and bear the expense thereof. Said owners and lessors declined to comply with said order and to bear the expense of removal of said encroachments.

Plaintiff claims upon the foregoing facts that he is entitled to a judgment either against the defendants Finkelstein for the sum of $1,865 or for a judgment against the defendants Rhinelander Real Estate Company and B. Ogden Chisolm for said amount. The defendants Finkelstein deny the plaintiff's claim and ask judgment dismissing it. The defendants Rhinelander Real Estate Company and Chisolm deny plaintiff's claim and contend that the plaintiff's only claim is against the defendants Finkelstein. The controversy submitted for decision is: Which of the parties hereto ought to bear the cost of the removal of said encroachments?

In Herald Square Realty Co. v. Saks & Co., 157 App. Div. 566, 142 N. Y. Supp. 808, where a controversy was submitted to this court as to whether the landlord or the tenant should pay for the removal of certain encroachments as ordered by the municipal authorities, this court distinguished the case of City of New York v. United States Trust Co., 116 App. Div. 349, 101 N. Y. Supp. 574, where the owner and lessor had been compelled to pay for such removal:

"Upon the ground that * * * the building in question" (in the Herald Square Realty Co. Case) "was constructed for the tenant with these encroachments, the removal of which it was bound to know might lawfully be required, and in the lease in that case it was not, as here, expressly provided in the clause requiring the tenant to comply with lawful rules, regulations, and ordinances, that such compliance should be at his expense, which left that clause open to the construction that it was intended to relate to rules, regulations, and ordinances with respect to the use of the premises, as distinguished from changes and alterations. Moreover, this lease was for a much longer term, and its provisions all tend to show that the tenant was to bear all expenses, and that the landlord was to receive the rent as a return on its investment without any deduction or liability on account of the premises during the term of the lease."

In the case at bar the covenants are much stronger in favor of the landlord than those under consideration in either of the two cases referred to. They also contain the provision that the tenant should at his own expense "perform, comply with and discharge all orders, requirements, rules and regulations of every nature and kind whatsoever" of the corporation of the city of New York or of any department thereof, or of the borough of Manhattan or of any department thereof, or of the state of New York or other governmental authority. And there is also a direct allusion to compliance with all ordinances,

regulations, and orders with respect to the sidewalk in front of the premises. The leases were also for a long term of years; they were made subsequent to the decision in the City of New York v. United States Trust Co. Case, supra, so that it is fairly inferable that the more comprehensive and explicit language of the covenants was drafted in view of that decision. In addition thereto, the defendants Finkelstein themselves erected for their own use and, as stipulated by the owners and their immediate landlord, Morrissy, at their own expense, the structures which have been removed as incumbrances.

So that it seems to me that this case is controlled by our decision in the Herald Square Realty Co. Case, supra, and that under the facts agreed to and the covenants and agreements referred to, the obligation rests upon the defendants Finkelstein to meet the cost of the removal of the encroachments erected by them.

It follows, therefore, that the cause of action as against the owners should be dismissed, and that the plaintiff have judgment against the defendants Finkelstein for the sum of $1,865 with interest from the 11th day of November, 1912, without costs as agreed to.

INGRAHAM, P. J., and McLAUGHLIN and LAUGHLIN, JJ., concur.

SCOTT, J. I concur upon the ground that defendants Finkelstein themselves erected the obstruction they were afterwards obliged to remove. In my opinion the resolution of the board of estimate and apportionment added nothing to the power and duty of the borough president as to the removal of street encroachments. The duty to remove or compel the removal of illegal obstructions rested on the borough president. The board of estimate and apportionment had no power to permit such obstructions to be erected or to continue, and its resolution directing their removal added nothing to the power of the borough president in the premises, but were merely advisory, furnishing perhaps a sort of moral support. I do not think therefore that the resolution of the board of estimate and apportionment affects the question involved in this appeal. Precisely the same question would have been presented if the borough president had acted upon his own initiative and no resolution had been passed by the board of estimate and apportionment.

As I have said the determining fact in the present case, as it appears to me, is that the Finkelsteins themselves erected the particular obstruction which was removed, and it harmonizes a judgment in their favor with both of the cases cited by Mr. Justice CLARKE.