We find nothing in the opinion of Mr. Justice Bradley in that case which indicates that the sureties could have been held liable but for this statute. In Matter of Fardette v. U. S. Fidelity & Guaranty Co., 86 App. Div. 50, 83 N. Y. Supp. 521, the surety of a guardian was held liable for a fund of the infant in the hands of the guardian before his appointment and qualification, but which had become lost by the misappropriation thereof by the guardian, for the reason that it did not appear that the guardian had misappropriated the fund before he qualified as such. The case of Rouse v. Payne, 120 App. Div. 667, 105 N. Y. Supp. 549, which involved a similar question, was disposed of on the ground that an action against the surety could not be maintained until the decree had been made by the Surrogate's Court settling the accounts of the guardian and fixing the amount for which the guardian was to be charged.

Our conclusion is that defendant has not shown facts sufficient to relieve itself from liability to the incompetent's estate for the $2,000 of the fund which that estate has not received and which it does not appear it can recover from the sureties on Mrs. Faller's bond.

The case was submitted to the court below upon an agreed statement of facts; no witnesses having been examined. It is in form a statement that plaintiff admits certain facts, and defendant certain other facts. We assume the intention of the parties to be that defendant offers in evidence the facts which plaintiff admits and asserts those facts to be true, and, vice versa, that plaintiff offers in evidence the facts which defendant admits and asserts them to be true. We assume therefore that both parties agreed to all the facts admitted by each.

We think the judgment appealed from should be reversed, and judgment directed upon the findings already made in favor of the plaintiff against the defendant for $2,000, with $807 interest to and including April 26, 1913, and at the rate of 6 per cent. per annum from and after that date, with costs of the action to the plaintiff, including the costs of this appeal. All concur.

---

BROKAW et al. v. SHERRY.

(Supreme Court, Appellate Division, First Department. February 6, 1914.)

1. LANDLORD AND TENANT (§ 157*)—LEASE—CONSTRUCTION AND OPERATION.

The owner of a city lot entered into two leases with defendant—a short lease and a long lease—the short lease providing that defendant should remove buildings then on the lot and superintend the erection thereon of buildings suitable for his business, a restaurant, the buildings to cover the whole lot, including vaults under the sidewalks to the extent that permits from the city could be secured. The only control or supervision reserved by the owner was merely that the plans be submitted to him. Defendant erected the buildings and, under permits from the city, constructed vaults under the sidewalks, and ornamental lights on the sidewalks. Later the city, in view of widening the street, revoked the permits and ordered the obstructions removed, entailing a cost of $17,000, which the owner paid and brought this action to recover from defendant. *Held* that, as defendant was free to erect such buildings as he thought best suited for his business without interference of the owner, the owner was not a joint tort-feasor with defendant in the erection of the obstruc-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tions, and hence was not, for that reason, precluded from recovering from defendant.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 571, 572, 574–582, 584–600, 602–607; Dec. Dig. § 157.*]

2. LANDLORD AND TENANT (§ 157*)—LEASE—CONSTRUCTION.

A short lease gave the lessee power to erect buildings on a city lot suitable for his business and a long lease provided for the rental, the lessee further agreeing to bear and pay all expenses, taxes, assessments, etc., which shall, during the term, be imposed upon or grow out of the building. *Held* that, under the lease, the lessee was liable for the cost of removing vaults under the sidewalks necessitated by the city's action in revoking permits to use the same.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 571, 572, 574–582, 584–600, 602–607; Dec. Dig. § 157.*]

Appeal from Judgment on Report of Referee.

Action by Isaac V. Brokaw and others against Louis Sherry. Judgment for plaintiffs, and defendant appeals. Affirmed.

The following is the opinion of the referee:

Under date of June 5, 1896, the plaintiff Isaac V. Brokaw, as owner of the premises therein described at the southeast corner of Fifth avenue and Forty-Fourth street in the city of New York, entered into two certain leases or contracts with the defendant Louis Sherry. By the first of these instruments, hereinafter termed the "short lease," Brokaw leased to Sherry the land therein described for a term ending September 1, 1897, and Sherry agreed to "proceed forthwith to remove the buildings at present standing on the land above described and hereby leased, and to make a contract or contracts therefor, and for the excavation and erection of a new building, in his own name, such building to be adapted for use in such business as the party of the second part (Sherry) is now carrying on at Fifth avenue and Thirty-Seventh street, in the city of New York, and the additional business of a restaurant and an apartment house * * * to cover the entire front both on Fifth avenue and Forty-Fourth street of the land hereby leased, and to stand entirely on said land, said building also to include a cellar and subcellar under the same, with vaults under all sidewalks, both on Fifth avenue and on Forty-Fourth street to the curb line, to the extent that the parties hereto may be able to obtain permits for, from the corporation of the city of New York * * * to be built and completed according to plans and specifications, contracts and agreements to be prepared by McKim, Mead & White, architects, which shall first be approved and countersigned by the party hereto of the first part (Brokaw), his executors, administrators or assigns, and to be constructed in all respects in accordance with the laws and ordinances in relation to the construction of buildings in the city of New York, and shall be finished on or before September first, in the year one thousand eight hundred and ninety-seven; such building to cost not less than four hundred thousand dollars ($400,000) and not over eight hundred thousand dollars ($800,000)."

Brokaw further agreed to pay all architects and superintendents charges and all expenses incurred in the removal of the old building and the erection of the new building, which building when constructed, together with all additions and improvements thereafter made therein, it was stated should belong wholly to Brokaw subject only to the rights of Sherry as lessee. It was further agreed that, if work was not commenced within three months after the date of the lease, Brokaw should have the right to terminate said lease and the instrument hereinafter mentioned, and, if Sherry did not proceed with the work in accordance with the terms of the lease after it had been commenced, Brokaw should have the right to proceed therewith.

By the second instrument, hereinafter called the "long lease," Brokaw leased the premises therein described (being the same premises set forth in the short lease), together with the building to be erected thereon, to Sherry

for a term of 21 years from September 1, 1897, at a certain fixed ground rent, and in addition thereto a sum equal to 5 per cent. upon the cost of the building.

Sherry covenanted therein to duly pay the rental reserved and to "bear, pay and discharge all such duties, charges, taxes, assessments, Croton water rates and charges, and payments of every kind whatsoever, extraordinary as well as ordinary, as shall during the term hereby granted be imposed on, or grow due and payable out of, or for or by reason of the said demised premises, or any part thereof, or the reversion or reversions, rents, issues or profits thereof, or upon or by the said party of the first part (Brokaw), his executors, administrators or assigns, in respect to or by reason of said reversion or reversions, rents, issues or profits, through, by virtue of, or by reason of any present or future law, ordinance or authority whatsoever; but nothing herein contained shall require the said lessee (Sherry), his successors or assigns, to pay any income, transfer or inheritance tax or any tax imposed on account of the death or the devolution of title to the heirs or devisees of the owner or owners of the premises hereby leased."

He further covenanted not to carry on or suffer to be carried on certain business therein set forth and described upon said premises, nor to "use or permit the use of the same or any part thereof for any purpose that may be contrary to the law of the state or of the city or county of New York or contrary to any ordinance of any board or department of the city of New York having the right to make the same."

On or about September 1, 1896, Sherry entered into possession of the premises under the short lease and proceeded to carry out its terms. The structure built thereon and known as the "Sherry Building" was erected by Sherry, pursuant to the terms of said short lease, according to plans and specifications, contracts and agreements prepared by McKim, Mead & White, architects, and approved and countersigned by Brokaw, and the same was completed about August, 1898, whereupon Sherry entered into possession thereof, under the terms of the long lease, which possession still continues.

The plans from which the Sherry Building was constructed called for and there was placed in front of said building on the Fifth avenue side a coping upon which was placed six ornamental lamps and standards and also a platform about six inches above the level of the sidewalk, all of which projected out upon the sidewalk and per se nuisances.

The plans further called for the construction of vaults under the sidewalk on Fifth avenue to the curb line. Sherry entered into a contract with one Clarence L. Smith, which contract was approved by Brokaw pursuant to the provisions of the short lease, for the excavation, plastering, work, and materials necessary in the construction of such vaults. In order to carry out this contract, Smith made application to the department of public works for permission to construct the same under the sidewalk and on July 16, 1896, a permit for this work was issued to Smith pursuant to said application which permit was revocable. The building, including the vaults and obstructions on the sidewalk, as called for by the plans, was erected as above stated.

The board of estimate and apportionment passed resolutions on April 1, 1908, April 24, 1908, and December 18, 1908, in regard to widening the carriageway on Fifth avenue between Twenty-Fifth and Forty-Seventh streets by which all permits for encroachments were repealed and revoked and the width of the carriageway was fixed at 55 feet and the sidewalks at 22½ feet each, and the borough president was directed to construct the said carriageway and sidewalks accordingly. Said resolutions further provided that encroachments of not more than 2½ feet from the building line were not to be disturbed.

On or about May 27, 1909, notice was given to the owner and occupant of 524, 526, and 528 Fifth avenue, which is the Sherry Building to make all changes necessary in order to comply with such resolutions.

Brokaw and Sherry each claimed that the changes ordered should be made by, and at the expense of, the other, and in June, 1908, the city being about to proceed to remove the vaults and structures on the sidewalks, an agreement was made between them dated June 9, 1909, providing that the work

145 N.Y.S.—52

rendered necessary by the action of the city should be done in the same way in which the building was originally constructed, namely, that the lessee have the plans made and execute the contracts for such work subject to the approval of the city of New York and of the owner, which should not be unreasonably refused, and the said owner should pay the amounts required for architects' services and doing the work, which work should be under the supervision of the lessee; that such action should be without prejudice to the liability of either party for the expenses of the alterations; and that this question should be determined entirely independent of the making of such contracts and plans and the payment for said alterations; and that such agreement should not be used by either party as affecting the question of liability for the payment of the work to be done thereunder. The agreement further provided that the question of liability should be determined upon an agreed case to the Appellate Division, First Department, based upon the leases, contracts, and other papers relative to the construction and use of the building and the ordinances and regulations by virtue of which the city widened Fifth avenue.

The work in question was thereafter done in accordance with said agreement, and Brokaw paid at various times sums aggregating $17,886.61, which was the reasonable value of the work done. All but $350 of this sum was for work done in remodeling the vaults.

Brokaw demanded of Sherry repayment of said sum, which demand was refused, and by agreement of the parties this action was substituted for the agreed statement of facts provided for in the agreement of June 9, 1909.

[1] The defendant claims that by reason of Brokaw having stipulated that all specifications, contracts, and agreements should be approved by him, that he built the building, the vaults and the encroachments on the sidewalk; that the construction of such of these as were ordered removed was a tort; and that therefore Brokaw was a joint tort-feasor with Sherry and cannot recover the amount paid for their removal.

The short lease shows that the intention of the parties was that Sherry should be free to erect such building on the demised premises as he thought best suited for his purposes and place such vaults under the sidewalks as he could obtain permits for, all subject to the approval of Brokaw. It is manifest from the instruments executed and from the testimony adduced that the provision requiring the approval of Brokaw was merely for the purpose of insuring the erection of a proper building upon the lot. Sherry was left free to erect such a building, within reasonable limits, as suited his purposes, and therefore the giving of this approval did not involve any question of personal taste, preference, or convenience, and hence the same could not be willfully withheld (Duplex Safety Boiler Co. v. Gordon, 101 N. Y. 390, 4 N. E. 749, 54 Am. Rep. 709; Gearty v. Mayor, etc., 171 N. Y. 61, 63 N. E. 804; Denis v. M. B. Ass'n, 120 N. Y. 497, 24 N. E. 843, 9 L. R. A. 189, 17 Am. St, Rep. 660), and from the surrounding circumstances it is clear that the building and vaults were constructed by Sherry. The vaults were lawful when built and continued to be so until the permit for them was revoked.

[2] The long lease provided that Sherry should pay annually as rent the ground rent of $47,250 with an additional sum of 5 per cent. of the total cost of constructing the building. In it he also covenanted to pay and discharge all such duties, charges, taxes, assessments, Croton water rates and charges, and payments of every kind whatsoever, extraordinary as well as ordinary, that should during the term thereby granted be imposed on or grow due and payable out of or by reason of said demised premises or any part thereof, except income tax, transfer or inheritance tax.

In other words, Brokaw's care was to assure himself beyond peradventure of the receipt during the continuance of the lease or any renewal thereof of a net rental equal to the ground rent and 5 per cent. on the cash which he paid out in the construction of the building; that is, the cost thereof. That the intention of the parties was that every possible charge should be paid for by Sherry appears not only from the very sweeping provisions of Sherry's covenant to "pay and discharge all such duties, charges, * * * and payments of every kind whatsoever, extraordinary as well as ordinary, as shall, during the term herein granted be imposed on, or grow due and payable out

of or for or by reason of said demised premises, or any part thereof," but also from the fact that, appreciating such sweeping language, might possibly be construed to include income, transfer, and inheritance taxes such charges were specifically excluded.

It is urged that the vaults and encroachments are not included within the land described in the leases, and therefore the amounts expended for changes made did not grow due and payable out of the demised premises, but the short lease provided for the erection of the building on the demised premises "with vaults under the sidewalk both on Fifth avenue and on Forty-Fourth street to the curb line to the extent that the parties hereto may be able to obtain permits for, from the corporation of the city of New York," and in the long lease Sherry covenanted not only to pay all charges to grow due and payable out of the demised premises, but also all payments to grow due "for or by reason of said demised premises or any part thereof." The vaults, platform, pillars, etc.—in short all that was altered or removed— were part of one single building, and any expenses occasioned by the necessity of removing the same grew out of the demised premises, and hence was an expense which Sherry covenanted to pay.

Finally, it is urged that because the platform, pillars, etc., were a nuisance per se, differing in that respect from the vaults, therefore the cost of their removal should be borne by Brokaw upon the ground that he was a joint tort-feasor with Sherry.

Brokaw merely approved the plans, but Sherry built the obstructions, and when their removal was ordered by the authorities it therefore became his duty to remove them. City of New York v. Rice, 198 N. Y. 124, 91 N. E. 283, 28 L. R. A. (N. S.) 375; Deshong v. City of New York, 176 N. Y. 475, 68 N. E. 880.

By reason of the conclusion reached in construing the leases I have not deemed it necessary to consider the question of the common-law liability of Sherry as tenant in the light of his covenants to repair and to return the property to the landlord in good condition.

Brokaw is therefore entitled to judgment as prayed for in the complaint.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

F. Bien, of New York City, for appellant.

A. G. Reeves, of Brooklyn, for respondents.

PER CURIAM. Judgment affirmed, with costs, on opinion of referee. See, also, Herald Square Realty Co. v. Saks & Co., 157 App. Div. 566, 142 N. Y. Supp. 808, and Morrissy v. Rhinelander Real Estate Co., 158 App. Div. 533, 143 N. Y. Supp. 826.

---

## GRESSMAN v. GRESSMAN.

(Supreme Court, Special Term, Erie County.　January, 1914.)

1. DISMISSAL AND NONSUIT (§ 18*)—PREJUDICE TO DEFENDANT.

While usually plaintiff may discontinue on payment of costs, the right to discontinuance is subject to the court's control and will be denied where discontinuance would prejudice defendant's rights.

[Ed. Note.—For other cases, see Dismissal and Nonsuit, Cent. Dig. § 32; Dec. Dig. § 18.*]

2. DIVORCE (§ 139*)—DISCONTINUANCE.

As a rule, the discontinuance of a divorce action will be denied especially where defendant demands affirmative relief, and a motion by

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes