Alexander Deutsch, Appellant, *v.* Robert Hoe Estate Company, Inc., Respondent.

First Department, December 1, 1916.

**Landlord and tenant — lease construed — when tenant required to make structural repairs directed by State Department of Labor.**

Where a lease in terms provides that the tenant is to conform to, and fulfill and perform all present and future obligations and all requirements of law and all present and future ordinances, regulations and lawful requirements of State, municipal and other legal and public authorities now or hereafter existing, the landlord cannot be held liable for the cost of complying with an order of the State Department of Labor directing the tenant to maintain in the premises a fireproof passageway involving construction work, such power to issue the order having been vested in said Department prior to the making of the lease.

Such provision of the lease is sufficiently broad to cover future changes of public policy.

Scott, J., dissented, with opinion.

Appeal by the plaintiff, Alexander Deutsch, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 16th day of November, 1915, dismissing the complaint upon the decision of the court after a trial before the court, a jury having been waived.

*Abram I. Elkus,* for the appellant.

*Charles K. Carpenter,* for the respondent.

Page, J.:

The action was by a tenant against a landlord to recover the sum of $2,750, the conceded cost of complying with two items in an order of the State Department of Labor, issued January 3, 1914, which directed the tenant in the demised premises to "maintain a fireproof passageway at least three feet wide leading from foot of fire escape to street," and "keep passageway leading from foot of fire escape to street adequately lighted at all times." This involved the construction of a fireproof mezzanine passageway on the first floor of the building to afford an emergency exit from the foot of the rear fire escape

First Department, December, 1916.          [Vol. 174.

to the front hall leading to the street. The method of con-
struction was as follows: The plastering in the ceiling of the
first floor was removed, thus exposing the steel beams of the
second floor. To these beams angle irons were bolted, to which
were fastened channel beams. Beams were then bolted at one
end to these channel beams, the other end set in and fastened
to the wall. Across the framework were put steel tie rods.
Upon this framework there was built a cinder and concrete
floor, over which was laid a wooden flooring. The side walls of
this passageway were made of hollow tile blocks. When com-
pleted the walls on both sides and the exposed underneath sur-
face of the concrete floor were plastered. This passageway was
thus suspended from the ceiling of the first floor hanging down
eight feet, occupying one-half of the space from floor to ceiling
of the first floor for a distance of about thirty-five feet in length
by five feet in width. To connect this passageway with the
fire escape an opening six feet wide by eight feet high was cut
through the rear brick wall of the building, which was twelve
inches thick; an iron beam placed across this opening, a door
frame and a calamine door placed therein and the opening fin-
ished off. At the other end of the passageway an opening
twelve feet wide was cut through the interior wall forming the
end of the hallway, which was constructed of hollow tile block.
In this opening was hung a calamine door and the opening
finished off. The stairway in the front hall did not rise to the
line of the passageway; it, therefore, became necessary to
remodel and reconstruct the stairway. It is conceded that in
making these alterations the plaintiff expended the sum for
which the action is brought, and also that he did the work
and paid for the same on the understanding that the question
of liability therefor should be litigated between the parties.

The lease of the premises was executed on November 20,
1906, between the predecessors of the parties to this action. It
provided for a twenty-one-year term from January 1, 1907,
and contained a number of covenants with the evident inten-
tion of securing to the landlord the rent as a net return with-
out deduction or liability. There was a covenant that the
tenant would "pay and discharge when and as the same shall
become due and payable, all taxes and assessments, and

duties, and all water rents and charges, and other impositions whatsoever, as well extraordinary as ordinary which, during the said term, may be assessed, levied or imposed upon the said demised premises, or any part thereof, by any government power or authority whatsoever, including all charges both extraordinary and ordinary, which may be assessed, imposed or charged for, or in respect to, the use of the Croton or other water, in or upon the said premises." And also for putting in and keeping in repair water meters and all charges incidental thereto. The tenant further covenants that she "shall and will, at her own sole cost and expense, well and sufficiently keep the said building and premises, both outside and inside, including decorations, yards, areas, fences and railings, side-walks and curbs along and adjoining the said premises, and all of the equipment of the said building, including engines, boilers, elevators, machinery, apparatus, permanent fixtures, electric light plants and equipments, and chandeliers, and electric light and gas fixtures, and appurtenances, plumbing work, pipes, basins and water closets, hereby demised, in good order and condition, and will, at her own cost and expense as aforesaid, make all the repairs of every kind, nature and description, including painting and decorating, which may be necessary for that purpose, and that all such repairs, both in respect to material used and in workmanship, shall be equal to the original work in said building." There is a further covenant that at the end or expiration of the term "the party of the second part shall deliver up in good order and condition, all and singular, the said demised premises and property, including all of the engines, boilers, elevators, machinery, apparatus, permanent fixtures, electric light plants and equipments, chandeliers and electric and gas light fixtures, and all replacements thereof and substitution thereof, and all additions to the said demised premises, or its said equipment, made during the said term, reasonable deterioration of the building owing to the lapse of time excepted, but this exception shall not in any way limit or restrict the obligation of the party of the second part to keep the building in repair as hereinbefore provided." And it was further agreed that the landlord "shall be, and is, exempt from any and all liability in the case of fail-

ure of water supply, or defect in the construction of the building hereby demised, or of the engines, boilers, elevators, machinery, fixtures, and so forth, therein installed, or for any defect of electric light, gas or power supply, or for any injury or loss to persons or property resulting therefrom. And the said party of the first part shall not be responsible or liable for any injury, loss or damage, which the said party of the second part may suffer or sustain by reason of the license or licenses for the construction, maintenance and use of the vault or vaults under the sidewalks in front of or adjacent to the said building, if any, being revoked by the municipal authorities of the city of New York, or any authority or authorities, nor shall the loss of the use of the said vault or vaults, or of any part thereof, be the basis of any claim by the said party of the second part against the said party of the first part, for any rebate or reduction in the rent herein or hereby reserved." There is a further covenant exempting the landlord "from any and all liability, and also from any and all damage caused to any person or persons whatsoever, resulting from the electric wiring or plumbing, gas, water, steam or sewerage pipes, or from machinery or apparatus, or from leakage, running or overflow of sewerage or gas, or from damage caused by lightning, wind, water, snow or ice upon or coming through, or falling from, the roofs, skylights, windows, or by and from any other action of the elements, or from injury resulting from the negligence of occupants of adjacent or contiguous premises, and it is expressly understood and agreed that the party of the second part shall and will indemnify and save harmless the party of the first part from all such losses." There is a further covenant which is directly involved in this litigation and that reads as follows:

"*Seventh.* And the party of the second part doth hereby further covenant and agree to and with the said party of the first part, that she shall and will, at her own cost and expense, conform to, and fulfill and perform all present and future obligations, and all requirements of law, and all present and future ordinances, regulations, and lawful requirements of State, Municipal, and other legal and public authorities, now or hereafter existing, and all regulations and requirements of the

Board of Fire Underwriters, and of each and all of the fire insurance companies insuring for the time being the said building against loss by fire, and all of the provisions of the usual New York standard form of fire insurance policy, in relation to and connected with the said demised premises, or any of the buildings erected thereon, or any part of the same, and will perform the legal duty of the party of the first part as to keeping the sidewalks and curbs in front of and adjoining the said demised premises free from snow and ice, and hold the party of the first part harmless from any liability by reason of failure so to do.

"*Eighth.* Provided, however, that the neglect or failure of the party of the second part to fulfill and perform the aforesaid obligations and requirements of law, ordinances, and regulations, shall not in any manner operate as a forfeiture of this Lease, until after the neglect or failure of the party of the second part to take reasonable and proper measures   *   *   *, for thirty (30) days after written notice   *   *   * from the State, Municipal or other legal or public authorities   *   *   *, or from the party of the first part, requiring the party of the second part to fulfill and perform the same, and the said party of the second part shall, as one of the terms and conditions of this Lease, be bound to, and shall and will at all times indemnify and save harmless the said party of the first part from and against any and all liability, loss or damage, to which he may be subjected by reason of any failure or non-performance by the said party of the second part, of, or in respect to, the covenants, stipulations, and agreements, on her part herein contained, or any of them."

The appellant claims that in accordance with the construction given by the courts to this latter covenant the tenant is not required to make structural repairs of a permanent, substantial or unusual character. (*City of New York* v. *U. S. Trust Co.*, 116 App. Div. 349; *Warrin* v. *Haverty*, 159 id. 840; *May* v. *Gillis*, 169 N. Y. 330; *Street* v. *Central Brewing Co.*, 101 App. Div. 3.) In this he has misconceived the real point of these cases. The question which has been determinative of the various cases that have been before this court and the

Court of Appeals has been the intent of the parties as expressed in the lease interpreted in the light of surrounding circumstances and not the extent or structural character of the change, except as that circumstance has a bearing on intent. This clearly appears when we compare these cases with those in which in similar covenants the tenant has been held liable. (*Morrissy* v. *Rhinelander Real Estate Co.,* 158 App. Div. 533; *Brokaw* v. *Sherry,* 161 id. 796; affd., 213 N. Y. 685.) In *Herald Square Realty Co.* v. *Saks & Co.* (215 N. Y. 427) it was held that the language used in the covenant which, with the exception hereinafter referred to, was similar to the covenant in the instant case, did not include the expense of removing street encroachments rendered necessary by the change of municipal policy. The court said: "The lease bears evidence on its face of having been carefully drawn by skilled counsel, but it contains no intrinsic indications that it was intended to cover radical changes in the building laws of the future. Had it been the purpose of the parties to guard against the extraordinary contingency that some later municipal administration might require the removal of such structural encroachments as show windows, they could easily have expressed that important consideration in terms too definite to be misunderstood." (P. 431.)

In the case at bar the parties have in terms provided that the tenant is to conform to and fulfill and perform all present and future obligations and all requirements of law and all present and future ordinances, regulations and lawful requirements of State, municipal and other legal and public authorities now or hereafter existing. This is sufficiently broad to cover the future changes of policy found lacking in the lease in the *Saks* case. Furthermore, in the construction of such a covenant the parties are deemed to contemplate the fulfillment of any order or requirements by a department which at that time is expressly given the supervision of premises of the class and character of the one demised and the requiring of any act conserving the health, safety or life of its occupants. At the time this lease was executed there was vested in the Factory Inspector, who was the predecessor of the Commissioner of Labor, if the fire escapes in use in any building are not approved

by him, power to require one or more fire escapes to be provided therefor at such locations and of such plan and style as he shall specify in his order. (Labor Law [Gen. Laws, chap. 32; Laws of 1897, chap. 415], § 83.) This section was re-enacted as section 83 of the Labor Law (Consol. Laws, chap. 31; Laws of 1909, chap. 36), except the Commissioner of Labor was substituted for the Factory Inspector. Section 83 was amended by chapter 461 of the Laws of 1910 and was repealed in 1913, and section 79b, under which the order was issued in this case, was enacted in place thereof. (Laws of 1913, chap. 461.) It, therefore, appears that power was vested in the said department which issued this order prior to the making of this lease, and that there has been no change of policy such as was discovered in the *Saks* case. It was the law of the contract, with regard to which the parties were presumed to have entered into their agreement, that the State Department of Labor had the power at any time to order a change in the fire escapes located on these premises. It was, therefore, within the contemplation of the parties that such an order might be made when this covenant was put in the lease. The tenant should on both of these grounds bear the expense of this extension of the fire escape.

The judgment should be affirmed, with costs.

CLARKE, P. J., SMITH and DAVIS, JJ., concurred; SCOTT, J., dissented.

SCOTT, J. (dissenting):

I am unable to concur in the affirmance of this judgment. The case, as it seems to me, is not to be distinguished in principle from *Herald Square Realty Co.* v. *Saks & Co.* (215 N. Y. 427). In this case, as in that, the work required to be done by the tenant, and for which he seeks reimbursement from the landlord, involves the "making an important and permanent structural change in the building" under lease. Such a burden, says the Court of Appeals (at p. 432), "is one that of course falls upon the owner, and if it is to be shifted to the tenant the warrant for the change should be plainly discoverable in the lease."

I shall not attempt to restate the facts in the present case,

for these have been very fully stated by Mr. Justice PAGE, but shall content myself with considering the clauses of the lease quoted by him, and which, as he considers, are sufficient to shift the liability to pay for the changes in the building from the landlord to the tenant. The only clause in the lease that can, as I think, by any possibility be so construed as to cover the case presented here is the 7th.

The 2d clause, which covers the obligation of the tenant to pay taxes, water charges and other like impositions, clearly has no application to the expense which the tenant now seeks to recover. As the Court of Appeals said, in the case already cited, of a similar clause in the lease then under consideration: " In that portion of the instrument which specifies that the defendant [tenant] is to pay all taxes, water rents and assessments of all kinds, it is expressly provided that he shall pay such charges ' whether ordinary or extraordinary ' and ' not only those commonly imposed.' Under the rule of *ejusdem generis* this reference to ' extraordinary ' expenditures must be limited to the class in which they are mentioned. Taxes and assessments are not in the same category with the cost of making substantial changes in a commercial building." (P. 432.) So also it is apparent, as I think, that the covenants for keeping the building and its appurtenances in good repair, and in returning it in like repair at the end of the term, afford no assistance in determining the question we now have to consider.

The 7th clause, under which, if at all, the defendant may escape liability for the cost of the structural changes in the building, reads as follows: " *Seventh.* And the party of the second part doth hereby further covenant and agree to and with the said party of the first part, that she shall and will, at her own cost and expense, conform to, and fulfill and perform all present and future obligations, and all requirements of law, and all present and future ordinances, regulations, and lawful requirements of State, Municipal, and other legal and public authorities, now or hereafter existing, and all regulations and requirements of the Board of Fire Underwriters, and of each and all of the fire insurance companies insuring for the time being the said building against loss by fire, and all of the pro-

visions of the usual New York standard form of fire insurance policy, in relation to and connected with the said demised premises, or any of the buildings erected thereon, or any part of the same, and will perform the legal duty of the party of the first part as to keeping the sidewalks and curbs in front of and adjoining the said demised premises free from snow and ice, and hold the party of the first part harmless from any liability by reason of failure so to do." The corresponding covenant in the lease considered in the *Herald Square Realty Company* case, while less verbose, was at least as comprehensive. It reads as follows: " And the party of the second part [the tenant] hereby covenants that it will promptly comply at its own expense with all orders, notices, regulations or requirements of any Municipal, State or other Authority or Departments or of the New York Board of Fire Underwriters, with reference to said premises." In the opinion of the Court of Appeals, even this most comprehensive clause did not cover the case of a substantial structural change in the building, although such change was compelled by a municipal requirement.

The lease under consideration also contains a clause similar to one which was deemed significant in *City of New York* v. *U. S. Trust Co.* (116 App. Div. 349). The tenant covenants that she will not "make any alteration in or upon the said demised premises, or any part thereof, nor cut, drill into or otherwise disfigure or allow the disfigurement of the iron, marble or stone of said building, or deface in any manner the said demised premises, or any part thereof without the written consent of the said party of the first part." Of a similar covenant this court said in the case last cited: " This negatives the idea that the tenant agreed to bear the expense of such alterations if they should be forced upon the building by any superior authority." The alterations made in the structure in the present case necessarily involved doing the things which the tenant could not lawfully do without his landlord's consent. They were as necessary to the estate of the landlord as to that of the tenant because, unless they were made, neither the landlord nor any tenant could occupy and use the premises for the purposes for which they were designed. In the absence of a covenant fixing

upon the tenant liability for such alterations beyond dispute, I think that no such liability should attach.

None of the cases relied upon to sustain the judgment appealed from seem to me to be in point. The inapplicability of *Brokaw* v. *Sherry* (161 App. Div. 796; 213 N. Y. 685) is clearly pointed out by Judge WERNER in *Herald Square Realty Co.* v. *Saks & Co.* (*supra*). As for *Morrissy* v. *Rhinelander Real Estate Co.* (158 App. Div. 533) the obstruction which the tenant had been obliged to remove, and for which he sought to charge the landlord, had been erected by the tenant himself in violation of law, and it was, therefore, just that he should bear the cost of its removal. For these reasons I am of opinion that the judgment should be reversed, and since there is no dispute as to the facts that judgment should be directed for the plaintiff, with costs in all courts.

Judgment affirmed, with costs.