WILLIAM YOUNGER, Respondent, *v.* JOHN J. CAMPBELL, Appellant.

First Department, February 23, 1917.

Landlord and tenant — lease construed — covenant by tenant to comply with ordinances and orders of municipality — fire escapes involving structural changes in building — when obligation to make changes does not rest upon tenant — eviction owing to failure of landlord to make structural changes — tenant not liable for rent — transfer of power from one municipal department to another.

Although a lease required the tenant to comply with the orders and regulations of the Federal, State and city governments and the departments and bureaus thereof, and to comply with all rules, orders and regulations

of the New York Board of Underwriters for the prevention of fires, at his own cost and expense, and also to make, at his own cost and expense, repairs of every nature to the demised premises, the covenant does not require the tenant to comply with that part of an order of the fire commissioner of the city of New York relating to the installation of fire escapes, etc., which involved structural changes in the demised building by inclosing the stairway from cellar to roof with a wall of fire-retarding material.

Hence, although under the terms of his covenant the tenant may have been required to make some of the improvements ordered by the fire commissioner, where he refused to make said structural changes not called for by the covenant, and, on the landlord's refusal to make said change was evicted by order of the fire commissioner, the landlord cannot recover the rent reserved in the lease for the period following the eviction.

As the eviction was due partly to the landlord's failure to comply with the order of the fire commissioner, as well as to the tenant's failure in this respect, the landlord cannot recover rent.

Although the charter of the city of New York did not authorize the fire commissioner to make an order for said improvements until after the making of the lease, it is immaterial where the same power had theretofore been vested in the building department under the Building Code, for there was a mere transfer of the power from one municipal department to another.

APPEAL by the defendant, John J. Campbell, from an order and determination of the Appellate Term of the Supreme Court affirming a judgment of the Municipal Court in plaintiff's favor.

*Ronald K. Brown,* for the appellant.

*Samuel A. Langfur,* for the respondent.

DOWLING, J.:

The question involved in this appeal is the right of the plaintiff, as landlord, to recover from the defendant, as tenant, one month's rent, amounting to $200, of the premises No. 354 Bowery in the borough of Manhattan, city of New York, for the month of February, 1916. The defendant resisted payment upon the ground that he was evicted before the day the rent would have become due under the lease.

The defendant originally leased the premises in question from Charles Schlang on April 11, 1911, who thereafter sold

the same to the plaintiff herein. The lease was for a period of five years at the yearly rental of $2,400 payable in equal monthly payments in advance. The building was occupied by the defendant, in conjunction with the two adjoining, as a lodging house. The lease contained the following clauses: " And the said party of the second part, further covenants and agrees that he will comply with all statutes, ordinances, rules, orders and regulations of the Federal, State and City Government, and of any and all their Departments and Bureaus applicable to said premises, for the correction, prevention, and abatement of nuisances or other grievances, in, upon, or connected with said premises during said term, and shall also comply with and execute all rules, orders and regulations of the New York Board of Fire Underwriters for the prevention of Fires, at his own cost and expense." * * * " And the said party of the second part further covenants and agrees to make at his own cost and expense, all repairs of every nature in and outside of the demised premises, and also agrees to keep the roof in repair at his own cost and expense."

On April 1 and August 15, 1915, the fire commissioner of the city of New York issued three certain orders to the plaintiff herein, as owner, requiring him to do certain work on said premises, consisting of providing an iron stairway; providing a counter-balanced stairway; repairing fire escapes; painting fire escapes; providing a return rail, top and bottom, on a fire escape; providing metal or kalameined frames and sashes with wire glass for the windows opening on fire escapes; providing an inclosure of fire-retarding material around a stairway from the cellar to the roof; installing telegraphic communication with the fire department; and installing an interior electric fire alarm system. These orders not having been complied with, the fire commissioner, acting under sections 775 and 778 of the Greater New York charter (Laws of 1901, chap. 466, added by Laws of 1911, chap. 899, as amd. by Laws of 1914, chap. 459),* notified the owner that he was ordered and required to forthwith vacate and cause to be vacated the said premises until the orders

---

* Since amd. by Laws of 1916, chap. 503.— [REP.

of the fire commissioner were complied with. Thereafter an order was obtained from the Supreme Court on January 22, 1916, directing the fire commissioner to cause the building in question to be vacated and to prevent and prohibit all persons from using or occupying the same until the orders specified were complied with. Thereafter, and pursuant to the order, and before February first, the fire commissioner caused the premises to be vacated and its use as a lodging house by defendant to be discontinued. No attempt was made either by the owner or by the tenant to comply with any part of these orders. The right of the fire commissioner to make the orders in question is not attacked.

The plaintiff claims that the tenant was bound to do the work necessary to comply with these orders pursuant to the provisions of the lease heretofore quoted. The defendant insists, *first,* that he was not responsible to make changes in the premises made necessary by a change of public policy; and, *second,* that his obligation to keep the building in repair did not include the making of structural changes not contemplated by the parties when the lease was made.

For the first proposition the defendant relies upon the case of *Herald Square Realty Co.* v. *Saks & Co.* (215 N. Y. 427), wherein the court said: " The language of this lease, construed in the light of contemporaneous regulations, usages and customs, seems to require the conclusion that it was not the purpose of the parties to subject the tenant to an expense caused wholly by extraordinary and unforeseen building alterations made necessary by a subsequent and radical change in the policy of the municipal government, and we are brought to this conclusion despite the forceful argument of counsel for the plaintiff in which he contends that the expense of complying with the order of the borough president, directing the removal of the show windows, comes within the very letter of the lease. We think that this extraordinary expense was not in the contemplation of the parties when this lease was made." But in that case the department of buildings had originally approved the plans for the erection of show windows on the premises there in question, projecting beyond the building lines of Thirty-fourth street and Broadway and a building had been erected in accordance with

such plans and had been maintained in such condition for ten years before the board of estimate and apportionment of the city of New York revoked and repealed all ordinances and other official acts under which encroachments were allowed in Thirty-fourth street and on Broadway and directing the removal of the same. Here, while it is true that the sections of the Greater New York charter upon which the fire commissioner relies for his authority to make the order in question did not become a law until October 19, 1911 — months after the making of the lease in question and after the term thereof had commenced — still the fact remains that the same power had theretofore been vested in the building department under the Building Code, and the mere transfer of power from one municipal department to another is not such a radical change in the policy of government as is referred to in the *Herald Square* case. Nor is the case of *Adler* v. *Miles* (69 Misc. Rep. 601), relied on by the respondent, similar to the case at bar, for there a part of a tenement house had been leased for use solely as a moving-picture theatre, and the court held that the subsequent action of the public authorities by refusing to grant any license for a moving-picture show in a tenement house, rendering it unlawful to use the premises demised for the only purpose for which they could be used under the lease, the tenant was discharged from the obligation to pay rent thereunder. In the case at bar the demised premises could still have been used for lodging house purposes if the orders of the fire commissioner had been complied with.

But it seems to me that the orders of the fire commissioner called for more than merely repairs or for the supplying of such apparatus, equipment or implements as might be necessary to render safe the conduct of the defendant's business in the demised premises. As the landlord refused to comply with any of these orders and sought to throw the entire responsibility therefor upon the defendant, and as the latter, in consequence of the landlord's refusal to comply with the orders, was evicted from the premises in question, the tenant cannot be held liable under the lease unless all the work called upon to be done under the orders of the fire commissioner was properly chargeable to the tenant; for if any part of the work should have been done

by the landlord and he failed to do the same, the responsibility for the eviction is equally his. Examining the details of the orders issued by the fire commissioner it is apparent that there is one, at least, which is a structural change which was not chargeable to the tenant under any fair construction of his lease. This was the requirement that the owner should provide an inclosure of approved fire-retarding material around the stairway from the cellar to the roof. This was no mere unimportant detail, but called for work involving changes in the construction of an important part of the building and obviously of an expensive and unforeseen character. We think this brings the case within the rule laid down in *Warrin* v. *Haverty* (159 App. Div. 840). There the department of buildings had ordered the owner to repair the walls, especially the rear one, so as to remedy a bulge therein, which involved taking down the rear wall and replacing it with a new one, rebuilding part of one of the side walls and anchoring the front wall. In that case the lease contained covenants similar to the two heretofore cited. The court said: "The changes thus made were structural in their nature. They went, in a large measure, to a reconstruction of the building itself and could not have been contemplated by the parties when the lease was made. When the tenant agreed to comply with all the rules, regulations and ordinances of the various city departments, it is unreasonable to suppose that either of the parties had in mind the tearing down of one of the walls and constructing a new one in its place any more than they had the tearing down of the entire building and putting up a new one. Leases, like other contracts, are to receive a reasonable construction, one that will carry out the intention of the parties to them. (*May* v. *Gillis,* 169 N. Y. 330; *Gillet* v. *Bank of America,* 160 id. 549.) Thus it has been held that an ordinary covenant to keep premises 'generally in good repair' does not include the restoration of a portion of a building which has become so dilapidated that it cannot be repaired. (*Street* v. *Central Brewing Co.,* 101 App. Div. 3; *May* v. *Gillis, supra.*) In *City of New York* v. *United States Trust Co.* (116 App. Div. 349) this court held that under a lease which contained a clause quite similar to the one here under consideration a tenant was not obligated to

remove, at his own expense, a stoop which encroached upon the street; that its removal was an alteration of the building and this was not contemplated by the parties when the lease was made."

We believe, therefore, that the owner, having failed to comply with so much of the orders in question as involved structural changes in the demised premises, and which it was incumbent upon him to do, as the burden thereof never passed to the tenant, and as the eviction of the tenant was due to the landlord's failure to comply with the orders in so far as he was bound so to do, as well as to the tenant's failure to comply with so much thereof as was properly assignable to him, and as the refusal of the owner to do his share of the work ordered was in part at least the cause of the defendant's eviction, the landlord cannot recover any rent for the period after the eviction occurred.

The determination of the Appellate Term and the judgment of the Municipal Court will, therefore, be reversed, with costs and disbursements in this court and at the Appellate Term, and judgment directed in favor of the defendant dismissing the complaint herein, with costs.

SCOTT, LAUGHLIN, SMITH and DAVIS, JJ., concurred.

Determination and judgment reversed, with costs in this court and at the Appellate Term, and judgment ordered dismissing complaint, with costs.