ROZELLE GALLAND, Respondent, *v.* SHUBERT THEATRICAL COMPANY, Appellant.

(Supreme Court, Appellate Term, First Department, November, 1918.)

Lease — covenants contained in lease of a theatre in another state — what constitutes an eviction — landlord and tenant — assignments — duty of owner to comply with all orders for structural repairs given by public authorities.

By a lease of a theatre in another state, which contained no covenant on the part of either landlord or tenant to make repairs, it was agreed that the premises " are rented in their present condition and the lessor is under no obligation to make changes, additions or repairs and that no changes to buildings or fixtures can be made without the written permission of the lessor." The lease expressly declared that the landlord was

the lessee under an earlier lease and that it covered the full term thereof, together with an additional term for which the original lessee had an option. An agreement executed synchronously with the sub-lease provided that it was "subject to the terms and conditions" of the earlier lease and in and by said agreement it was further provided that, in addition to the rent, the lessee should also pay a further stated sum per annum, "such payments being in the nature of compensation awarded to the party of the first part for the transfer of her rights and interest in the premises to the party of the second part, and the resulting deprivation of any profits from the operation of the said theatre on her own account." *Held,* that regardless of whether, as between the parties to said agreement, it was technically an assignment of the lease creating the relationship of landlord and tenant between the owner of the premises and the sub-tenant, or whether it was merely a sub-lease, it was the intention of the parties that the sub-lessor should transfer to the sub-lessee all her rights in the premises and that the sub-lessee should accept all the burdens imposed upon the lessee under the original lease. The original lease contained a like clause as to the renting of the premises "in their present condition," etc., as did the sub-lease, and a further clause that the lessor should at its own expense make all necessary repairs except such interior repairs as could be made by the ordinary employees of the lessee. *Held,* that under the last clause, as between the owner of the premises and its lessee, it was the duty of the owner to comply with all orders for structural repairs given by the public authorities of the state in which the theatre was located and consequently when said public authorities gave notice that certain repairs were required, no obligation to make them rested either under the sub-lease or agreement, either upon the sub-lessor or its tenant, but such duty did rest upon the owner of the premises under the original lease.

Where, therefore, said owner failed to make such repairs his tenant had a right to claim that the closing of the theatre because of failure to comply with requirements of the public authorities who refused to permit the premises to be used as a theatre constituted an eviction. In an action to recover rent under the sub-lease and several installments of the amount agreed to be paid in addition to the rent, *held,* that whether the defendant was to be regarded as an assignee of the original

lease or as a sub-tenant of the plaintiff, it had been evicted from the premises without fault on its part and was no longer liable for rent under said lease or under the contemporaneous contract.

APPEAL by the defendant from a judgment in favor of the plaintiff, entered in the City Court of the city of New York upon the report of the referee.

William Klein (Charles H. Tuttle, of counsel), for appellant.

Strauss, Reich & Boyer (Charles Strauss and Eugene D. Boyer, of counsel), for respondent.

LEHMAN, J. The plaintiff herein has recovered judgment for two months' rent of a theatre in Wilkesbarre, Penn., known as the Wilkesbarre Grand Opera House, under a lease executed by her to the defendant, and also for two monthly installments of an additional sum of money which by agreement made simultaneously with the lease the defendant covenanted to pay to the plaintiff during the term covered by the lease. The complaint alleges the making of the indenture of lease and the making of the agreement; the non-payment of the moneys alleged to be due under these instruments and also '' that the plaintiff has duly performed all the conditions '' of said indenture of lease and agreement on her part to be performed. The answer as originally served denied this final allegation and set up as an affirmative defense and counterclaim that the premises were let for use as a theatre and that thereafter the authorities of the state of Pennsylvania directed the plaintiff to comply with certain '' requirements of the City Inspector and Department of Labor and Industry of the State of Pennsylvania with regard

to the said Grand Opera House because of its unsafe condition and because it was dangerous to life and limb; '' that the plaintiff failed and neglected to comply with these requirements and that as a result the premises became unsafe and the building was therefore closed by the public authorities who refused to permit the premises to be used for the purpose for which they were let and that by reason of these facts the defendant was evicted from the premises.

At the opening of the trial the plaintiff moved for judgment in her favor, claiming that the allegation that the plaintiff had duly complied with the terms of the lease and agreement constituted no essential part of her cause of action and that the denial of this allegation therefore raised no issue, and that the facts alleged in the affirmative defense and counterclaim were insufficient to constitute an eviction. The learned referee sustained these contentions and dismissed the defense and counterclaim but permitted the defendant to plead and to attempt to prove a surrender and acceptance. At the close of the testimony he gave judgment for the plaintiff for the amount demanded in the complaint.

There can be no doubt but that the referee was correct in holding that the defense of surrender and acceptance was not sustained and since no other issue was really litigated this appeal involves only questions of law. The appellant raises numerous technical points of pleading and procedure upon this appeal, but it seems to me that the record can be stripped of these technicalities, leaving the one substantial question of whether the facts which the defendant claims he could prove if evidence were admitted under the attempted defense dismissed by the referee, would in law constitute an eviction.

The defendant's claim, that the denial of the allegations of performance by the plaintiff of the conditions of the lease and agreement raised an issue on which the plaintiff had the burden of proof, seems to me without merit. The defendant's counsel in his argument before the referee claimed in effect that the lease and agreement between the parties showed on their face that the plaintiff was not the owner but the lessee of the premises; that the original lease to her was by reference incorporated into the sublease to the defendant, and into the agreement between the parties, and that when the three instruments are read together, it would appear that the plaintiff was bound to make " substantial and structural repairs." He urged that the plaintiff must prove that she made these repairs before she can recover rent under the lease and that by the defendant's denial that the plaintiff complied with the terms and conditions of the lease and agreement, an issue as to the making of these repairs was properly raised. It is too well established to require any citation that even where in a lease the landlord covenants to make repairs this does not constitute a condition precedent to the recovery of rent, and the trial justice correctly overruled this contention, but he permitted the defendant to amend its answer by setting up as part of its affirmative defense of eviction, that the plaintiff's failure to comply with the requirements of the Pennsylvania officials was " in breach of the covenants and conditions of the lease on her part to be performed and in breach of the plaintiff's duty under the lease to make all substantial and structural repairs." The defendant upon this appeal however raises a new contention, viz., that under the agreement between the parties it appears that the plaintiff had only an option of a lease from

her own landlord for part of the term which she demised to the defendant and that unless she exercised that option no rent and certainly no additional sum under the agreement would now be due, and that plaintiff was therefore required to plead and prove that she had exercised this option. It seems at least doubtful whether this contention would in any event be sound, but in view of the fact that it was not properly raised in the court below it should not be considered by us.

There are, however, some more serious technical questions presented by the manner in which the case was tried. The learned referee indicated at the beginning of the hearings that it was his intention to narrow the issues so far as was practical in order to expedite the trial, but on the other hand since no jury was present he intended to admit all evidence which might possibly be relevant to any real issue in the case and which might possibly aid either the trial or an appellate court. Before ruling upon the plaintiff's motion to dismiss the defense and counterclaim, he asked for briefs upon the question of whether the closing of the theatre by public authorities for failure to make substantial and structural repairs as alleged in the answer, could constitute an eviction. After receiving these briefs he decided that neither under the law of Pennsylvania nor under the law of New York could such closing constitute an eviction where the lease did not expressly place upon the landlord the burden of making these repairs. He therefore dismissed the defense of eviction and the trial proceeded upon the defense of surrender and acceptance. Under this issue he admitted practically all evidence which was offered, including proof of the orders by the Pennsylvania state authorities and the subsequent closing

of the theatre by them; he also received in evidence
Pennsylvania law reports offered by both sides to
establish the Pennsylvania law. Thereafter upon the
request of the defendant he decided to reverse his
ruling dismissing the defense of eviction and to per-
mit the defendant to introduce evidence to show the
exact condition of the theatre in order to prove that
the public authorities closed the theatre for failure to
make *structural alterations* rather than repairs, and
to bring this case within the rule of law ennunciated
by the Appellate Division of this department in the
case of *Younger* v. *Campbell,* 177 App. Div. 403. At the
subsequent hearing which he set for the introduction
of this evidence, he stated however in effect that he
had again considered the record carefully; that he had
determined that the law of Pennsylvania and not the
law of New York undoubtedly applied; that under
the law of that state the closing of the theatre even
for failure to make *structural alterations* and repairs
constitutes no eviction and that therefore it would be
an idle waste of time to take further evidence as to
the condition of the theatre and the nature of the work
required by the orders of the Pennsylvania authori-
ties. He thereupon gave judgment for the plaintiff
and included in his report findings of fact that under
the law of Pennsylvania there was no eviction.

The rights of the parties under the lease and agree-
ment are undoubtedly governed by the law of the state
of Pennsylvania where the demised premises are
situated, but the defendant contends that since the
plaintiff failed to plead the law of that jurisdiction the
court could neither receive evidence or make findings
of fact in regard to the foreign law but is bound to pre-
sume conclusively that the law of Pennsylvania cor-
responds to the law of this state or to apply our law

Appellate Term, First Department, November, 1918.  [Vol. 105.

to the case.  *McBride* v. *Farmers Bank,* 26 N. Y. 450, 457.  The plaintiff in her complaint did not and could not plead that under Pennsylvania law there was no eviction because eviction is an affirmative defense which must be set up by answer and cannot properly be negatived in advance in the complaint.  If the answer sufficiently pleads the Pennsylvania law as part of the defense of eviction, then plainly the plaintiff need not plead that law a second time in her reply but may either admit the allegations of the defense as to that law or deny them and introduce evidence to make good her denial.  In the present case the defendant's answer does not sufficiently plead any rule of Pennsylvania law different from the rules of the common law as interpreted by the courts of this state; nevertheless in the argument of both counsel in the court below it was urged that the rights of the parties were governed by Pennsylvania law and it was thereupon expressly stipulated " that the answer as interposed be deemed to refer to the laws of the State of New York and the laws of the State of Pennsylvania, the defendant conceding that he relies upon no statutory law of that state."  It seems to me quite clear that under this stipulation if the referee decided that the law of Pennsylvania rather than the law of New York applied, both sides had the right to introduce evidence to show what acts would or would not actually constitute an eviction under the law of Pennsylvania.  Moreover, the position of the defendant under the present pleadings would be no stronger if we apply the common law as interpreted under the decisions of the courts of New York than if we apply the law of Pennsylvania as found by the court.  Concededly the closing of the theatre for failure to comply with the requirement of the state authorities would

constitute an eviction both in Pennsylvania and in New York if the duty of making the repairs or alterations so required is by the express terms of the lease placed on the landlord and would constitute no eviction if the duty is expressly laid upon the tenant. If there is any difference in the law of the two jurisdictions such difference arises only in a case where the lease itself is silent upon the question of whether the landlord or the tenant should comply with such orders.

In New York state it seems to be well established that the closing of a theatre by the public authorities for failure to *make repairs* required by their order constitutes no eviction where there was no covenant in the lease on the part of the lessor to make repairs of any character. *Gould* v. *Springer,* 206 N. Y. 641. Where, however, the order of the authorities calls for structural *alterations* which cannot properly be considered *repairs* and which the parties could not have contemplated that the tenant should make, it becomes the duty of the landlord to make such alterations even though the tenant and not the landlord is required by the lease to make all " repairs " or to comply with orders of the public authorities, and failure of the landlord to do so constitutes an eviction. *Warrin* v. *Haverty,* 159 App. Div. 840; *Younger* v. *Campbell,* 177 id. 403. A question of mixed fact and law may therefore sometimes arise as to whether an order by the public authorities calls for the making of " structural alterations " or for the making of " repairs." In the present case, however, the defendant has not pleaded that the landlord has failed to make structural " *alterations* " as required by the municipal authorities but merely that she failed to make " substantial and structural *repairs,*" and it seems to me that if there is no contractual obligation imposed on the land-

13

lord by the terms of the lease to make repairs, then under under the laws of this state there can be, as a matter of law, no eviction for failure to make even so-called " substantial or structural *repairs.*" Technically, therefore, if the defense was insufficient under Pennsylvania law it was also insufficient under the law of New York and the defendant would not be benefited if the court were to decide that the Pennsylvania law was not properly pleaded and could not be proved.

The defendant, however, urges with considerable force that the referee dismissed the defense as insufficient without proof of the law of the state of Pennsylvania although it was stipulated that the defense referred to such law; that although the referee did thereafter make findings of fact as to such law these findings are not sustained by any evidence properly admitted, and that if the defendant were given opportunity to prove the law of Pennsylvania he might be able to show that the closing of the theatre for failure to make structural repairs constitutes an eviction under Pennsylvania law even if the lease does not expressly impose any obligation on the landlord to make repairs. Undoubtedly under that stipulation the defendant had the technical right to prove the law of Pennsylvania to sustain the defense of eviction and the referee could not hold the defense insufficient under the Pennsylvania law without receiving proof and making findings of fact in regard to such law. On the other hand, the referee received briefs from both parties before he decided upon the sufficiency of the defense and although these briefs are not part of the record it appears from the discussion and the statements made by defendant's counsel to the referee that his brief included the Pennsylvania citation upon

which he relied.  He did not at that time urge that
technically these decisions must be admitted in evi-
dence before the court could consider their effect or
could follow a rule of law different from the law estab-
lished by the decisions of the courts of this state.
Obviously this court would under such circumstances
be very reluctant to reverse the judgment and order a
new trial merely to permit the formal introduction in
evidence of the decisions already apparently consid-
ered by the court.  Unfortunately, however, since the
record does not contain even a citation of the deci-
sions of the courts of Pennsylvania in regard to evic-
tion upon which the defendant relies, we cannot deter-
mine whether the findings of fact as to the law of
Pennsylvania are justified.  While we might disregard
the technical failure to mark in evidence the volumes
containing the decisions of the courts of Pennsylvania,
relied on by the defendant, and we might, on this
appeal, consider those decisions which the record
shows were cited to and presumably considered by the
referee, yet we cannot entirely disregard the rule of
law that a court cannot take judicial notice of foreign
law but such law must in some manner be proven as a
fact and in the absence of anything in the record to
show which cases the defendant relied on, we are not
in a position to determine whether the cases cited are
consistent with the referee's findings in regard to the
law of Pennsylvania.  There is, it is true, some doubt
as to whether I am correct in saying that the volumes
in which these decisions are contained were not intro-
duced in evidence.  As stated above, after the defense
of eviction was dismissed the trial proceeded upon the
defense of surrender and acceptance and upon this
issue the referee admitted practically all the evidence
offered though much of this evidence would appear

more relevant and material to the defense of eviction than to the defense of surrender and acceptance. When the defendant announced that subject to offering certain technical evidence thereafter, his case was closed, the plaintiff's attorney thereupon inquired whether there was a stipulation on the record that the Pennsylvania cases might be considered as marked in evidence. The defendant's attorney stated, " We did not stipulate anything on the record," and the plaintiff thereupon formally introduced in evidence the volumes of Pennsylvania reports containing the decisions upon which he relied. Thereafter the defendant also offered in evidence one decision of the Pennsylvania courts. At the time that these decisions were offered the defense of eviction had already been dismissed and technically of course no evidence could be offered or received upon this issue. Nevertheless I have no doubt but that the plaintiff offered and the referee received this evidence as to Pennsylvania law merely in order to cure the informality in the procedure at the opening of the trial when the defense of eviction was held insufficient without any formal proof as to the Pennsylvania law. The defendant, however, claims that it did not offer the single Pennsylvania case to establish the law of that jurisdiction as to eviction which was then no longer an issue in the case but solely upon the defense of surrender and acceptance which was then being tried. Under the circumstances I doubt whether we have the right to hold that the defendant understood the purpose for which the trial judge was then receiving evidence of the law of Pennsylvania and that in offering the single decision in that jurisdiction he did so with the idea of establishing the law of that state in regard to eviction. Possibly, therefore, if the law of Pennsylvania is material or rele-

vant in this case the defendant is entitled to a new trial in order that a record be presented from which this court may be in a position to determine whether the findings of fact as to Pennsylvania law are correct, even though it seems quite clear that the defendant is at least partly responsible for those very defects in the record of which he now complains.

It seems to me, however, unnecessary to consider further the effect of these defects in the record because in my opinion the findings of fact of the law of Pennsylvania in regard to the reciprocal rights and obligations of landlord and tenant under a lease are not relevant in this case. Concededly the law as found by the referee applies only where these rights and obligations are not defined by the lease or agreement of the parties. Where, however, the parties have expressly agreed as to these obligations the terms of the agreement will be enforced by the courts regardless of any rule of law by which their rights and liabilities under the contract would otherwise be determined. In the present case both parties to the litigation claim that the agreement between the parties expressly covers the question of the obligation of the landlord to make substantial repairs, but the defendant claims that the contract expressly places this obligation upon the landlord, and the plaintiff claims that the contract expressly exempts the landlord from such obligation, while the learned referee has decided that the agreement is entirely silent upon this point. The instruments between the parties contain clauses and terms that are vague, inexact and self contradictory and arguments of some force can be made to sustain all of these conflicting interpretations. Nevertheless after careful consideration of the agreements I am strongly inclined to the conclusion that the parties intended and

understood that the tenant was not bound to make any substantial repairs, and that if it became impossible to use the premises by reason of failure to make such repairs when required the tenant was no longer bound to pay the agreed rental or compensation for the premises.

 The rights of the parties are fixed by the lease and agreement of July 7, 1909. These instruments were executed contemporaneously, they cover substantially the same subject matter, they refer to and are evidently complementary of each other and must be read together. The indenture of lease contains no covenant on the part of either landlord or tenant to make repairs and it contains a clause that '' it is further understood and agreed that the premises above specified are rented in their present condition and the lessor is under no obligation to make changes, additions or repairs and that no changes to buildings or fixtures can be made without the written permission of the landlord.'' If the plaintiff were not only the lessor of the premises but also the owner and if the lease of July 7, 1909, completely covered the obligations of the parties in regard to the demised premises during the terms of the lease, then it would seem that the parties intended that the landlord should not be required to make either repairs or alterations, and that even if by order of the public authorities the premises could not be used as a theatre until either alterations or repairs as required were made such order could not relieve the defendant of its obligation to pay rent under the lease. The lease, however, expressly provides that the plaintiff is herself the lessee of the premises under a lease from the Wilkesbarre Grand Opera House Company, dated 27th of July, 1907, and it expressly covers the full term of the earlier lease

together with an additional term for which the plaintiff had an option.  The conditions of the earlier lease and of the indenture of lease of July seventh are not entirely identical but by the agreement of July seventh executed by the parties hereto contemporaneously with the indenture of lease it is expressly provided that the lease or so-called sublease between these parties " is subject to the terms and conditions " of the earlier lease by the Wilkesbarre Grand Opera House Company to this plaintiff, and the agreement also provides that in addition to the rent which the defendant agreed to pay to the plaintiff in the lease (which amount is the same as the rent reserved in the lease to the plaintiff) the defendant also should pay to the plaintiff the further sum of $5,000 per annum, " such payments being in the nature of compensation awarded to the party of the first part for the transfer of her rights and interests in the said premises to the party of the second part, and the resulting deprivation of any profits from the operation of the said theatre on her own account." It seems to me quite clear, in view of these and other clauses in the agreement, that quite regardless of whether the lease dated July 7, 1909, between these parties is technically an assignment of the lease to the plaintiff creating the relationship of landlord and tenant between the owner of the premises and this defendant, or whether it is merely a sublease, it was the intention of the parties that the plaintiff should transfer to the defendant all the rights which the plaintiff had in the premises and that the defendant should accept all the burdens imposed upon the plaintiff in the lease to her.  In order to determine the rights of the parties in the premises it therefore becomes necessary to examine the terms of the original lease between the Wilkesbarre Grand Opera House

Appellate Term, First Department, November, 1918.    [Vol. 105.

Company and the plaintiff. That lease contains the same clause that I have quoted above from the lease by the plaintiff to the defendant, viz.: " 1. That the premises above specified are rented in their present condition and the lessor is under no obligation to make changes, additions or repairs, and that no changes to building or fixtures can be made without written permission of lessor," but it also contains the following clause: " 5. Lessors to make all necessary repairs at its expense except such interior repairs as can be made by the ordinary employees of the lessee." It is somewhat difficult to reconcile these two clauses. Perhaps the first clause means merely that the lessee accepts the premises in their present condition and the landlord is not required to make any preliminary alterations or repairs which may become necessary thereafter. However, whatever may be the meaning of the first clause, we cannot disregard the clear and unequivocal covenant on the part of the lessors that during the term of the lease they were to make all necessary repairs at their own expense except such interior repairs as can be made by the ordinary employees of the lessee. Under this clause it is evident that as between the owner of the premises and its lessee it was the duty of the owner to comply with all orders for structural repairs. As between the plaintiff and the defendant the plaintiff did not in the indenture of lease of July 7, 1909, assume as landlord the obligation to make such repairs but it is significant that the plaintiff did not assume any obligation or make any affirmative covenant of any kind in that indenture except the obligation to exercise an option for the extension of her own term. It is quite evident that it was the intent of the parties that the plaintiff should transfer her rights and interest in the premises

but that she should not on her part assume any affirmative obligations as landlord. We therefore have this somewhat novel situation. While the plaintiff is not under any obligation to make repairs herself, either as the intermediate landlord of the defendant or as the tenant of the owner, yet under her own lease from the Wilkesbarre Grand Opera House Company she had the right to require that company to make these repairs and if it failed to make repairs and by reason of such failure the theatre was closed, she had the right to claim that such closing constituted an eviction by her landlord. By her lease to and agreement with the defendant the plaintiff evidently attempted to transfer to the defendant her rights under her own lease from the Wilkesbarre Grand Opera House Company and that included the right to look to the owner to make the repairs. Since the plaintiff agreed to transfer to the defendant her rights and interests under the original lease and these rights and interests included the right to have her landlord make the necessary repairs, then clearly no obligation could be implied that such repairs were to be made by the defendant. Consequently when the public authorities gave notice that certain repairs were required no obligation to make these repairs rested under the lease or agreement either upon the plaintiff or the defendant, but this obligation did rest upon the owner under its lease to the plaintiff. When the owner of the theatre failed to make these repairs his tenant had a right to claim that the closing of the theatre constituted an eviction. If the defendant was the assignee of the lease the relationship of landlord and tenant existed between it and the owner and there was therefore an eviction by its landlord; if the defendant was only a subtenant then there was an eviction of the plaintiff as lessee of the

Wilkesbarre Opera House Company by its landlord and consequently an eviction of the subtenant by paramount title. In either event the defendant was without its fault deprived of the use of the demised premises and in law evicted therefrom. It was therefore no longer liable for rent under the lease or for any additional sum under the express terms of the contract. It follows that the judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

Weeks and Finch, JJ., concur.

Judgment reversed and new trial ordered, with costs to appellant to abide event.