ARNOLD RAY SELIGMANN & CO., INC., Plaintiff, *v.* EDWARD I. GROTSKY, Defendant.

Municipal Court of the City of New York, Borough of Manhattan, Ninth District, February, 1922.

**Landlord and tenant — lease — provision that tenant shall comply with all municipal requirements — liability of landlord to pay for structural changes required by the municipal authorities which were in no way owing to the intended or actual use of the premises.**

A lease provided that the tenant should comply with all the requirements of the board of health, municipal authorities, and police and fire departments of the city of New York, and that all additions, alterations and repairs, ordinary and extraordinary, of every kind should be made by the tenant at its own cost and expense. The tenant, in compliance with an order of the board of estimate and apportionment, made structural changes which in nowise were the result of the intended, stipulated or actual use of the premises. *Held,* that the cost of making such alterations must be borne by the owner of the premises who had taken the title subject to the lease and an assignment thereof.

The owner of the premises, with notice of the resolutions of the board of estimate and apportionment which had been forwarded to him and the tenant with notice of the alterations required to be made, having declined to make them, the tenant in possession, in an action against said owner to recover the reasonable value of the work paid for by him in complying with said order, is entitled to judgment.

ACTION under a lease by tenant to recover cost of alterations.

*Dennis & Buhler (Arthur B. King,* of counsel), for plaintiff.

*Isidore Faitt,* for defendant.

GENUNG, J.   The action is brought by a tenant under a written lease to recover from the owner of certain premises, known as No. 7 West Thirty-sixth street, for the expense incurred in making alterations to comply with an order for the widening of the roadway and sidewalk of West Thirty-sixth street, Manhattan.

The plaintiff was in possession under a written lease executed on June 27, 1904, and assigned on December 11, 1905, to a partnership, to the business of which plaintiff succeeded. The defendant obtained title to such premises on June 30, 1921, subject to said lease and assignment. On or about June 17, 1921, the board of estimate and apportionment of the city of New York adopted certain resolutions for the widening of West Thirty-sixth street, copies of which resolution with a notice were forwarded to the

owner and tenant of the said premises on or about June 30, 1921, and were made part of the complaint herein. Such notice and resolution required that the stoop in front of the said premises be moved back, and other changes to be made, as were stated therein and more particularly indicated on the specifications and blueprints that were offered in evidence at the trial. Immediately upon receiving the notice and resolution, the plaintiff forwarded the same to the defendant and called upon him to comply therewith, and served notice that, if he failed to do so within a reasonable time, plaintiff would cause the required work to be done and would hold him responsible for the cost thereof. Defendant declined to comply with the requirements of said notice and resolutions and thereafter the plaintiff did cause the alterations to be made and the work to be done in accordance therewith at an expense of $1,000. This action is brought to recover that amount.

The lease provided that the tenant should " comply with all the requirements of the Board of Health, Municipal Authorities and Police and Fire Departments of the City of New York," and that all additions, alterations and repairs, ordinary and extraordinary, of every kind should be made by the tenant at the tenant's own cost and expense. The lease further provided that the tenant *might*, at any time prior to the expiration of the first ten years of the lease, at his own cost and expense, make such alterations, improvements and additions to the premises *as he deemed expedient*, provided the same were made under the supervision of competent architects, in a thorough, workmanlike and substantial manner and in a style and quality conforming to the neighborhood and the value of the building upon the demised premises, and that any such alterations, improvements and additions were made in accordance with the requirements of the board of health, municipal authorities and building, fire and police departments of the city of New York, and that all such alterations, improvements or additions as soon as made were to become attached to and form part of the freehold and become the property of the owner, without any payment or allowance whatever from the owner to the tenant at any time.

The specifications for labor and material required the present stoop to be demolished sufficiently for cutting the same back to the point shown on the plans; the present brownstone to be recut and used, the finish of the new surface to match in texture, and all lines to be cut through and the stone to be properly bedded in mortar, using the same size joints as those existing at the premises; the present brownstone risers to be used and set in position; a new eight-inch brick wall to be built up in the present coal vault

of good hard-burned common brick, laid up in cement mortar; the present coalhole or cover to be carefully removed and reset in a new location, and the sidewalk to be patched with concrete and cement; new steps in the areaway to be of concrete, with a tunnel under the bottom tread of each areaway so as to permit the water to run into the present drains and with easy access for cleaning the strainers; the sidewalk over the new fill to be of concrete with a cement finish similar to the steps and poured at the same time; the present grilles to be cut down in size as shown in the plans and to be firmly set in the masonry, and all materials and workmanship to be of the best of their respective kinds, and the whole job to be first class in every particular and to be done in accordance with all the rules and regulations of the building department of the city of New York and all other ordinances of the city and state of New York. It is apparent from these requirements that the alterations constituted structural changes. The alterations were in no way necessary for the safety of the premises or for the health of the occupants of the building or for any change in the purposes for which the premises were used or in the character of the business transacted thereon by the tenant. The alterations were due solely to a change of policy on the part of the municipal authorities, resulting from wholly changed conditions not existing and not contemplated at the time the lease was made.

The authorities seem to hold as between plaintiff, the tenant of the premises, and defendant, the owner thereof, that the duty of complying with the resolutions and order of the board of estimate and apportionment rested upon the defendant. In *Herald Square Realty Co.* v. *Saks & Co.*, 215 N. Y. 427, the predecessor of both parties in the year 1901 entered into an agreement to erect a building on the premises suitable for the defendant's business as a department store. The plans, which indicated that the show windows projected beyond the building line, were approved by the proper municipal authorities. Thereafter the building was erected in accordance with such plans. The lease there in question was executed in November, 1903, for a term of twenty years and six months. By the terms thereof the tenant (defendant) was required to " comply at its own expense with all orders, notices, regulations or requirements of any municipal  *  *  *  authority," and also to keep " the demised premises and every portion thereof, inside and outside,  *  *  *  in good order, condition and repair." In addition the lease obligated the tenant to keep in repair a considerable number of appurtenances and fixtures. In 1911 and 1912 the board of estimate and apportionment of the city of New York adopted resolutions the effect of which was to require the removal

of the show windows in question.  The Court of Appeals, per Werner, J., said in deciding that the burden of removing the show windows rested upon the landlord and not upon the tenant:  " It is impossible, of course, to lay down a general rule that will precisely fit all cases.  The language of this lease, construed in the light of contemporaneous regulations, usages and customs, seems to require the conclusion that it was not the purpose of the parties to subject the tenant to an expense caused wholly by extraordinary and unforeseen building alterations made necessary by a subsequent and radical change in the policy of the municipal government, and we are brought to this conclusion despite the forceful argument of the counsel for the plaintiff, in which he contends that the expense of complying with the order of the borough president, directing the removal of the show windows, comes within the very letter of the lease.  We think that this extraordinary expense was not in the contemplation of the parties when the lease was made."

In *City of New York* v. *United States Trust Co.*, 116 App. Div. 349, the action was instituted by the city to compel the removal of a stoop extending beyond the building line, and both landlord and tenant of the premises were made parties defendant.  It was contended by the landlord that judgment should go against the tenant, his contention being predicated upon the lease of the premises under which the tenant had possession.  The lease provided that the tenant should " do all inside and outside repairs necessary to said premises, including roofs, sidewalks and yards thereof, and * * * comply promptly with all the rules, regulations and ordinances of the Board of Health, Fire Department and Building Department, or other city departments and city ordinances applicable to said premises."  It was further provided that the tenant should not make any alteratio ns, additions or improvements without the written consent of the landlord.  The court, per Houghton, J., said:  " We see nothing in these covenants or in the lease as a whole which imposes any obligation upon the tenant to incur the expense of removing the encroachments in question.  Certainly their removal was not in the minds of the parties when the lease was entered into.  The tenant's agreement to comply with all the rules, regulations and ordinances of the various city departments did not contemplate the tearing down of the stoop and steps and building a new entrance to the building, or the abandonment of the areaway and the providing of a new mode of outside entrance to the basement.  Leases, like other contracts, are to be reasonably construed according to the apparent intention of the parties."

In *City of N. Y.* v. *McCarthy*, 171 App. Div. 561, the court said, citing the case of *Herald Square Realty Co.* v. *Saks & Co., supra,*

per Laughlin, J.: " I am of the opinion that it is now the general rule that a tenant who merely covenants to put and keep in repair is not obliged to rebuild where the rebuilding is not rendered necessary through his failure to perform his covenant to keep in repair or through other fault on his part."

In *Deutsch* v. *Hoe Estate Co., Inc.*, 174 App. Div. 685, the majority of the court declined to apply the rule stated in *Herald Square Realty Co.* v. *Saks & Co.*, *supra*, because of the fact that the lease provided that the tenant was to conform to and fulfill and perform " all present and future ordinances   *   *   *   now or hereafter existing," holding quite properly that this language was sufficiently broad to cover the future changes of policy found lacking in the case of *Herald Square Realty Co.* v. *Saks & Co.*, *supra*.    In *Gregory* v. *Manhattan Briar Pipe Co.*, 174 App. Div. 106, the court declined to apply the rule stated in the case of *Herald Square Realty Co.* v. *Saks & Co.*, *supra*, because of the fact that the requirements in question were necessary as a result of the use to which the tenant had put the premises in the *Gregory* case.    In *Younger* v. *Campbell*, 177 App. Div. 403, the court held, under covenants similar to those in the case at bar, that the tenant was not obliged to comply with such part of an order as involved a structural change in the building.    In *Cohen* v. *Margolies*, 107 Misc. Rep. 480; affd., 192 App. Div. 217, there was a covenant similar to that in the case at bar, except that there the lessees agreed to comply " at their own sole cost and expense." The ordinances in question required the construction of a fire escape and the extension of an interior stairway.    The Appellate Division, per Greenbaum, J., by a divided court, held that the tenant had covenanted to make all such repairs as might be necessary " to properly uphold, maintain and preserve the said premises " and held the tenant liable for such expense.    In *Frank* v. *Bowman Automobile Co.*, 195 App. Div. 377, the tenant was held liable for the expense of inclosing certain staircases with fireproof partitions (the premises having been built for and occupied by the tenant as a garage), the court, per Smith, J., quite properly holding the principle stated in the case of *Herald Square Realty Co.* v. *Saks & Co.*, *supra*, inapplicable, saying: " The requirement, therefore, was peculiarly the result of the very use to which the tenant was putting the building."    In *Pross* v. *Excelsior Cleaning & Dyeing Co., Inc.*, 110 Misc. Rep. 195, 202, the court, per Eder, J., held that a fire escape was not a structural change, saying: " The uses to which the premises were to be put were such as rendered imperative the erection of the fire escape, and I think it must be held that it was reasonably contemplated and intended by the parties, by the provisions alluded to, that they should include an obligation and

assumption by the tenant to meet and fulfill all demands of the municipal authorities, regarding the premises, occasioned by its intended, stipulated and actual use."

In the case at bar the alterations were in nowise the result of the intended, stipulated or actual use of the premises. In the case of *Getty* v. *Fitch, Cornell & Co.*, 107 Misc. Rep. 404, this court said: " In no case is a tenant obligated to make structural changes, even where he covenants to comply with and perform municipal orders and regulations at his own sole cost and expense, except where the violation has been created through the act or at the request of the tenant. *Herald Square Realty Co.* v. *Saks & Co.*, 215 N. Y. 427. The tenant, under a covenant to comply with municipal orders and regulations is not obligated to do so at his own cost and expense unless he has expressly so stipulated. *City of New York* v. *United States Trust Co.*, 116 App. Div. 349."

Under these authorities and decisions it must be held in the present case that the cost of these alterations must be borne by the owner of the premises.

It was stipulated at the trial that the architect employed by the plaintiff wou d testify that the work was reasonably worth the sum of $1,000; and that one witness for the defendant would testify that the making of the alterations to comply with the resolutions would cost $250, and another witness would testify that the making of the alterations would cost $350, such sums, however, being the cost of doing the work in the cheapest possible manner, without regard to the character of the premises. It was further stipulated that the court might make a personal inspection of the premises, with an architect of his own selection, together with the attorneys and parties, and fix the amount of the damages. The court, in company with an architect, together with the attorneys and parties and the architect employed by the plaintiff, did visit the premises, examine the specifications and plans, and inspect the work done and the changes made by the plaintiff. The court finds as a fact that the work was reasonably worth the sum of $1,000, being the amount paid to the contractor who submitted the lowest bid and was awarded the contract.

The plaintiff is entitled to judgment for the sum of $1,000, together with interest and costs.

Judgment for plaintiff.