ROZELLE GALLAND, Appellant, v. SHUBERT THEATRICAL COMPANY, Respondent.

Supreme Court, Appellate Term, First Department, January 29, 1925.

Landlord and tenant — lease — motion for reargument of appeal from judgment for tenant on counterclaim in action for rent of theatre building — tenant forced to quit premises by reason of unsafe condition of balcony, following plaintiff's refusal to make repairs — lease provided plaintiff " is under no obligation to make changes, additions or repairs "— tenant neither bound to make repairs nor pay rental beyond time building became impossible for use — plaintiff not obligated to call upon her lessor to make repairs — determination at former trial destroyed defendant's counterclaim as to liability of plaintiff for repairs — proofs in second trial erroneously received where pleadings are defective — pleadings may not be conformed to proof where original pleadings are non-existent — motion for reargument granted and defendant's counterclaim dismissed.

A sublease providing in part " that the lessor is under no obligation to make changes, additions or repairs " does not obligate the lessor or lessee to make repairs nor was the lessor called upon to request her lessor, the owner, to make repairs for the benefit of her lessee. Moreover, it was the intention of the parties under the lease that if the tenant's occupancy of the building became impossible by reason of the failure to make repairs, the tenant was not obligated to pay the agreed rental for the premises.

Accordingly, plaintiff's motion for reargument of an appeal from a judgment entered for defendant on its counterclaim in an action for the rental of a theatre building, subleased to the defendant, for expenditures incident to defendant's removal from the premises, should be granted and judgment directed for plaintiff dismissing defendant's counterclaim, where it appears that the defendant was forced to quit the premises following the plaintiff's refusal to make necessary repairs to the balcony, which had been ordered by the fire officials of the State of Pennsylvania, where the building was located, since the determination of the issues at a former trial destroyed defendant's counterclaim as to plaintiff's liability for repairs. Moreover, the proofs in the second trial were erroneously received, where the pleadings on the trial only included the summons, the appearances, and the skeleton of defendant's counterclaim remaining after the first trial.

Nor will the court conform the pleadings to the proof, where there is present no original pleading to be conformed, since conformation necessarily presumes the existence of a pleading.

BIJUR, J., dissents.

MOTION by plaintiff for reargument of appeal from judgment of the City Court of the City of New York, entered upon referee's report in favor of defendant on its counterclaim.

*Strauss, Reich & Boyer* [*Charles Strauss* and *Eugene D. Boyer* of counsel], for the motion.

*William Klein* [*Charles H. Tuttle* and *William Klein* of counsel], opposed.

MULLAN, J.:

In so far as this court may be permitted to concern itself, much of the law of the case has been made for us by our holding when the action was before us on the prior appeal (105 Misc. 185). Our first task, therefore, is to ascertain what that holding was. As I read the opinion of Judge, then Mr. Justice, LEHMAN, I find no difficulty in learning what it was the intention of this court to hold. The peculiar, and in some respects anomalous, agreement of the parties, made up in two papers that were construed together as the memoralization of a single set of engagements, presented quite obvious difficulties. It was plain that it was the plaintiff's desire to insure that she receive a certain definitely fixed net return, and that the defendant would have to take a mere chance of the owner's making repairs or alterations. The ruling was that she had accomplished her purpose. After remarking that ordinarily applicable rules of law must be ignored whenever parties themselves agree upon their respective rights and liabilities, Judge LEHMAN said that "the parties intended and understood that the tenant [defendant] was not bound to make any substantial repairs, and that if it became impossible to use the premises by reason of failure to make such repairs when required, the tenant was no longer bound to pay the agreed rental or compensation for the premises.   *   *   *   It was the intention of the parties that the plaintiff [landlord] should transfer to the defendant all the rights which the plaintiff had in the premises and that the defendant should accept all the burdens imposed upon the plaintiff in the lease to her.   *   *   *   As between the plaintiff and the defendant the plaintiff did not   *   *   *   assume as landlord the obligation to make such repairs but it is significant that the plaintiff did not assume any obligation or make any affirmative covenant of any kind   *   *   *   except the obligation to exercise an option for the extension of her own term.   It is quite evident that it was the intent of the parties that the plaintiff should transfer her rights and interest in the premises but that she should not on her part assume any affirmative obligations as landlord."   Not merely the excerpts I have quoted, but all the expressed *rationes decidendi* appear to me to point unequivocally to an intention to rule that, as between plaintiff and defendant, the full measure of monetary harm that could befall plaintiff in case of a vacation of the sort that occurred, was the loss of a tenant and the rent that tenant would otherwise thereafter have been compelled to pay during the term of the lease. In view of the very extended treatment by Judge LEHMAN of the rights and liabilities of the parties arising out of the failure to make the repairs in question, and the repeated reference to the fact that plaintiff was under no duty in respect

of repairs, it is inconceivable that there was any intention to leave open the question whether or not it was the duty of the plaintiff to call upon her lessor to make the repairs for the benefit of the defendant, her lessee. It is true that the counterclaim was drawn upon the theory that plaintiff had obligated herself to make the repairs, and not upon the theory that it was merely her duty to endeavor to cause her lessor to make the repairs. Nevertheless, Judge LEHMAN's treatment of the case broadly covered the substantive rights and obligations of the parties, and he made no reference to any limitations or difficulties created by the form of the counterclaim. It seems to me, therefore, to be clear that it was intended to rule, and that this court did rule, that no duty *of any sort* rested upon plaintiff in respect of repairs. If that were the ruling, we of this court are not free to question it. Mr. Justice BIJUR, as it seems to me, is in effect proceeding upon the theory that it is open to us to pass upon the question as if it were presented here in this case for the first time. Under what I consider the law of the case that is at present binding upon this court, I am of the opinion that it was not the duty of the plaintiff to take any steps to induce or compel her lessor, the owner, to live up to its engagement with her to make the repairs that were ordered by the Pennsylvania authorities. Assuming, however, that I am in error in considering that we are not at liberty to pass upon the question of law hereinabove referred to, I am of the opinion that the proofs contained in the record now before us were not only erroneously received, but would not sustain the judgment even if they had been properly received. The defendant, in drafting its counterclaim, had relied explicitly and entirely upon a direct and express covenant on plaintiff's part to make the repairs in question. The decision of this court, as expressed through Judge LEHMAN, having compelled the defendant to abandon that claim, the defendant was left with something that was entitled a counterclaim, but which had been stripped bare of its contents. The plaintiff had accepted the defeat she had sustained at our hands in respect of her own cause of action. The litigation thus was reduced to a mere shell, being kept alive only by the summons, the appearance, and the skeleton of a counterclaim. With what remained of the controversy in that condition, the defendant caused to be brought on for a new trial, before a new referee, what it pleased to consider the " action," in which, as upon a supposed counterclaim, it was the prosecuting suitor. No attempt had been made, or was ever made, by the defendant to procure an amendment of the counterclaim we had held to be bad. Quite obviously, as there were no issues, there could, properly speaking, be no trial, and yet the

simulacrum of a trial was solemnly proceeded with. Over the objection of the plaintiff, the defendant introduced proofs of the damage caused it by being compelled to vacate, and proofs that might possibly have been admissible to show some breach of duty on plaintiff's part if one could only know what it was that, according to defendant, plaintiff did that she should not have done, or that she failed to do that she should have done. It was precisely as if a plaintiff had come into court without ever having served a complaint. Furthermore, the most that I have been able to gather from the arguments of defendant's counsel upon the hearings reported in the record before us, and upon the argument and reargument here, is that the defendant makes the very general claim that the plaintiff did not act, in relation to the making of the repairs, in the way in which she ought to have acted. At no time has there been offered or suggested on behalf of defendant any definite formulation, in terms of ultimate fact, of the claim it stood upon at the hearings, or now desires to stand upon. Mr. Justice BIJUR is of the opinion that we should exercise the right of an intermediate appellate court to conform the pleadings to the proofs. In the first place, conformation necessarily connotes the existence of a pleading, and there is here no original pleading, using that term in its real sense, to be conformed. In the second place, assuming that the device of conformation may be availed of to the extent of wholly creating a set of pleadings, what allegations would we, by that process, be setting up? As I have said, no statement of plaintiff's duty and its breach has come from defendant, and I find none in Mr. Justice BIJUR's opinion. My learned brother does indeed say, in a very general way, that the plaintiff breached because " she not only declined to require the necessary repairs to be made, but asserted  *  *  *  that the defendant was bound to make them itself." Plainly, the mere erroneous assertion of plaintiff that it was defendant's duty to make the repairs, did not give the defendant a cause of action. Plainly, too, plaintiff's failure to " require " her lessor, the owner of the building, to make the repairs, was not a breach of duty. " To begin with, the meaning of the word ' require ' is, in the circumstances we are dealing with, not at all clear." If it refers to plaintiff's possible use of her practical rights as a stockholder in the owning corporation, the answer is, as Mr. Justice BIJUR himself points out, that that stock ownership is an immaterial fact. If it refers to a supposed duty of plaintiff to *compel* the owner to make the repairs, by resort to legal action, my answer is that there is no form of action with which I am familiar by which that compulsion could have been achieved. The law of Pennsylvania governs this case, and there was no proof that in that

State specific performance would lie. In this State it is well settled that specific performance will not lie to compel the making of repairs under a covenant in a lease (*Beck* v. *Allison,* 56 N. Y. 366); and that would appear to be the rule generally prevalent throughout the country. (5 Pom. Eq. Juris. [4th ed.] § 2182.) And it is to be remarked, in passing, that no suggestion is made that the action of specific performance could have been availed of. I think it is very plain that the most that plaintiff could have done toward compulsion would have been to bring suit for damages for the non-making of the repairs, in the hope of thus prodding her lessor into a belated willingness to make the repairs; and nobody contends that that was the measure of plaintiff's duty. I do not pretend to say that, were it not for our prior holding, the facts in proof would not warrant the making of *some* sort of claim of breach of duty on plaintiff's part in respect of repairs. I insist merely that no valid claim of such a breach has thus far been made. Furthermore, even if we were able to discern some possible grounding of a claim upon which defendant could stand, I think that for us to create, in such a situation as is before us, issues of our own choosing, and date them back by the conformation process, would not only be obviously unfair to the plaintiff, but it would not even be fair to the defendant as the latter might not care to stand upon the issues we should create in its interest.

It seems to me to be abundantly clear (1) that the plaintiff was under no duty whatsoever to the defendant in respect of repairs, and (2) that the conformation device may not be resorted to, for the reasons stated. Accordingly I vote for reversal of the judgment and the dismissal of the counterclaim.

Motion for reargument granted, and upon reargument order of this court dated November 11, 1924, vacated, judgment reversed, with costs, and judgment directed for plaintiff dismissing the counterclaim, with costs.

GUY, J., concurs; BIJUR, J., dissents in opinion.

BIJUR, J. (dissenting):

This is an appeal by plaintiff from a judgment in favor of defendant on its counterclaim. Many of the details which I do not consider material to the present controversy will be found in a previous opinion of this court by LEHMAN, J. (105 Misc. 185). Some review of the facts, however, is necessary since there are items not referred to in that opinion because not material to the question then under consideration.

On July 27, 1907, the Wilkesbarre Grand Opera House Company, to which I shall refer as the Opera House Company, leased to

plaintiff for a term of years with an option for renewal the opera house owned by it in the city named. The lease contained a provision against assigning or subletting without the written consent of the lessor; also a clause to the effect that the lessor would make all necessary repairs at its expense. In 1909, by resolution of the stockholders of the company, the option was extended to September 10, 1919, and the right awarded to sublet to such persons as might be approved by the board of directors who in turn were required to carry the resolutions into effect. The directors acted accordingly, naming the defendant as the proposed sublessee. Thereupon, on July 7, 1909, plaintiff executed to the defendant a sublease of the premises to be used for the purpose of a theatre. The sublease provided in part that " the lessor (plaintiff) is under no obligation to make changes, additions or repairs." Also that " The lessor hereby covenants and agrees in no manner or form to interfere with the conduct of the business or management of the lessee herein." The term of this sublease ended on September 10, 1919. Simultaneously therewith plaintiff and defendant executed a collateral agreement, reference being made therein to the sublease and to the lease of the Opera House Company to the plaintiff. This collateral agreement provided for a payment by the defendant of $5,000 per annum in addition to the rent reserved in the sublease, which was $66 per annum, and described such payments as " in the nature of compensation awarded to the party of the first part [plaintiff] for the transfer of her rights and interests in the said premises to the party of the second part [defendant]." In an earlier part of the agreement the sublessor (plaintiff) agreed to exercise the options awarded to her by the Opera House Company for the full period, namely, until September 10, 1919, covered by the sublease. Both the sublease and the collateral agreement are rather verbose. The purpose of this rather complicated set of papers is not very clear, but I have no doubt as to their legal effect, and as to the respective rights and obligations of the parties in the situation which subsequently arose. In September, 1916, the appropriate State and city officials notified the defendant's manager that the balcony of the theatre was unsafe and required reconstruction. Defendant brought this letter forthwith to the attention of plaintiff's husband, who at the time was acting as her representative and who was also president of the Opera House Company. He in reply said that it was the duty of the defendant to do the repairing. At or about that time plaintiff consulted counsel in regard to the matter and was advised to, and did, maintain that position. Defendant, standing upon its rights, refused to make the repairs and the building was thereupon closed by the authori-

ties, and defendant forthwith removed its effects. This court has held, on the previous appeal, that under those circumstances defendant was not liable to plaintiff for subsequent rent. The present appeal is from a judgment in favor of defendant on its counterclaim for expenditures incident to its removal from the premises.

Plaintiff's chief contentions are, *first,* that she was under no obligation to defendant whatsoever in respect to the matter of the reconstruction of the balcony, and that, consequently, no recovery against her by reason thereof can be sustained, and *second,* as a matter of practice and pleading that the judgment awarded can be sustained by defendant only on a theory not presented by the pleadings. Plaintiff urges that its first claim is sustained by the opinion of this court on the prior appeal, and quotes at length from the language of the opinion at pages 200 to 201, the substance of which, according to plaintiff, is that she did not " assume any affirmative obligations as landlord." I do not so interpret the opinion. Read in their context these words were intended merely to express the view of this court that plaintiff was under no obligation herself to make the repairs, a conclusion which defendant concedes. The classic warning of MARSHALL, Ch. J., in *Cohens v. Virginia* (6 Wheat. [U. S.] 264, 399) against interpreting the general language of an opinion apart from the facts to which it applies may well be supplemented by the consideration that such interpretation must also take into account the arguments of counsel toward which it is directed. Indeed, I think that the opinion was not only intended not to indicate that plaintiff was without fault or obligation in the premises but under the circumstances disclosed I cannot understand how defendant could have been relieved from its obligation to pay rent to plaintiff without leading to the inevitable conclusion that the latter was at some fault and had failed in some obligation toward the defendant.

I return then to a consideration of the legal relation of the parties at that time. Since plaintiff by her own lease from the Opera House Company was forbidden to assign and that fact was known both to her and to defendant, it is quite evident that it was the intention of all the parties that the instrument which she executed to defendant should be a sublease. Indeed, it is rather difficult to conceive of any doubt as to the nature of the instrument under those circumstances, and if there were any, it would be removed by the fact that the lease provided for the payment of the rent to plaintiff, that it was always so collected and that in this very action plaintiff sued for such rent.

In the collateral agreement (which seems to have been devised

for the purpose of enabling plaintiff to receive a bonus or additional payment almost equivalent to the rent itself) plaintiff undertook to exercise the option to extend the lease from the Opera House Company for a term already covered by the sublease itself, and, as phrased by this court: " The plaintiff evidently attempted to transfer to the defendant her rights under her own lease from the Opera House Company, and that included the right to look to the owner to make the repairs." Since plaintiff, however, to the knowledge of all the parties was by the terms of her lease forbidden to assign the same she could not assign any of its covenants in her favor. The result of the collateral agreement, therefore, was to obligate plaintiff to make available to defendant the other covenants in her favor in the opera house lease precisely as she made available to them her right to exercise her option for an extension of the term. Defendant, of course, could not itself avail of the option because the agreement therefor ran exclusively to the plaintiff. Similarly, the covenant to repair was an unassignable contract between the Opera House Company and plaintiff. If defendant thereafter found it necessary or advantageous to avail of either it could do so only through and at the hands of plaintiff. Nevertheless, while plaintiff readily exercised her option for the extension, she not only declined to require the necessary repairs to be made, but asserted, on appropriate demand being made, that the defendant was bound to make them itself. This to my mind constituted a clear breach of her collateral agreement and warranted a recovery of damages therefor.

Although I do not deem it material to the cause of action hereinabove sustained in favor of defendant, it is at least significant of what was in the minds of the parties throughout these transactions, that plaintiff was the owner of about sixty per cent of the stock of the Opera House Company; that her husband and representative in these transactions was its president; and that in the previous dealings in reference to the defendant's sublease the stockholders undertook to require the directors to act as they did. From this it seems to me to follow with a fair degree of certainty that had plaintiff upon defendant's request demanded that the Opera House Company make the repairs forthwith that result would have followed without delay and the present controversy have been avoided.

Plaintiff's contention that the cause of action which I have explained is not so set forth in the counterclaim is not without justification. The counterclaim, which repeats the allegations of the separate defense alleges that the plaintiff herein in breach of the covenants and conditions in the lease on her part to be

performed, and in breach of the plaintiff's duty under the lease to make all substantial and structural repairs, failed and neglected to comply with the requirements mentioned in the preceding paragraph, which related to the notice from the public authorities. It is true that by a very strict construction it might be possible to read these allegations as imputing to plaintiff the breach of an obligation to make, on her own responsibility, the repairs referred to rather than defendant's claim upon the trial and upon this appeal that the breach of her obligation and duties consisted in her failure to exercise her right to compel the Opera House Company to make these repairs. The distinction, however, at best is a very nice one. I make free to assume that in the interest of precision in pleading and in formulating issues defendant might in the case of a jury trial have been required to amend its pleading before proceeding, although there would be little if any change in the material evidence offered in the one case rather than the other. But this trial was before a referee; all the facts were fully brought out; all the witnesses were available and there was no claim of surprise in that respect. Under the circumstances, thus disclosed it seems to me that it would be an adherence to bare form rather than an appreciation of the substance of the cause to reverse this judgment in order to enable defendant to insert in a pleading the statements as to the precise basis of its claim for damages which it had made repeatedly during the course of hearings, which lasted from January 31, 1921, to June 24th of the same year. In support of his contention that he be permited to inquire concerning plaintiff's control over the Opera House Company by ownership of stock, defendant's counsel, interpreting to the referee the previous opinion of this court as he understood it, said, at the hearing of February eighth: " All of which, in my judgment, goes to show that if she, who held for us the right to require the Wilkesbarre Grand Opera House Company to make the repairs, instead of so requiring those repairs to be made, actually prevented them from doing it so as to throw on us the entire burden of these repairs and the risk of their being made, then she is responsible for this eviction and it was a breach of duty on her part because she owed us the duty to make good on her obligations, one of which was to require this landlord to make these repairs for the defendant." The point is emphasized by the fact that as early as the hearing of February seventeenth plaintiff, over her counsel's objection as not within the issues, was interrogated and testified categorically that she sent no written notice and made no demand on the Opera House Company to make these repairs.

Plaintiff's further general contention in her brief on this appeal that the evidence did not warrant the judgment, is, I think, wholly without merit. The findings of fact made by the referee are not only fully supported by the testimony, but are in my opinion the only result which could have been arrived at thereon.

The motion for reargument should, therefore, be denied.

Motion for reargument granted, and upon reargument, order of this court dated November 11, 1924, vacated, judgment reversed, with costs, and judgment directed for plaintiff dismissing the counterclaim, with costs.